(September 27, 1926.)

FANNIE L. HEYLMAN, Appellant v. IDAHO CONTI-
NENTAL MINING COMPANY, a Corporation, IDAHO
CONTINENTAL COMPANY, a Corporation, KLOCK-
MANN BROTHERS, a Corporation, and ALBERT
KLOCKMANN, Respondents.

[250 Pac. 1081.]

CORPORATIONS—LEASE OF CORPORATE PROPERTY TO DIRECTOR—LACHES
OF STOCKHOLDER IN ASSERTING RIGHTS—FINDINGS ON ACCOUNTING.

1. Although lease of property of corporation to its directors,
or any one of them is open to suspicion, such act is not void or
necessarily fraudulent, where it is within the power of the cor-
poration and is subsequently ratified by stockholders.

2. Lease of property to corporate director *held* not in fraud
of minority stockholders, in view of fact that corporation was in-
solvent and foreclosure proceedings were about to be instituted.

3. Corporate stockholder, having failed for nine years after
lease of corporate property to director to assert any rights, *held*
guilty of laches to such extent that court of equity will not grant
relief.

4. Findings of trial court relative to accounting will not be
disturbed, when supported by substantial evidence.

APPEAL from the District Court of the Eighth Judicial
District, for Boundary County. Hon. John M. Flynn,
Judge who tried equities. Hon. W. F. McNaughton, Judge
who tried accounting.

Action by plaintiff Fannie L. Heylman on behalf of her-
self and others similarly situated to cancel lease, certain
contracts relating thereto and modifying the same, and sub-

Publisher's Note.
   1.  See 7 R. C. L. 481.
   3.  See 7 R. C. L. 321.
   4.  See 2 R. C. L. 206.

See Appeal and Error, 4 C. J., sec. 2853, p. 878, n. 82.
Corporations, 14a C. J., sec. 1885, p. 117, n. 97, 99, 2 New; sec.
1939, p. 159, n. 16.

leases made thereunder on certain mining property, for the appointment of a receiver and for an accounting.    Judgment for defendants.    *Affirmed.*

Isham N. Smith and S. S. Gundlach, for Appellant.

The power of one corporation to hold stock in another for the purpose of controlling it is extraordinary and not incidental or implied, and can exist only by express grant in the governing law and the charter.    (*Riley v. Callahan Min. Co.,* 28 Ida. 525, 155 Pac. 665; *Hotchkin v. Third Nat. Bank,* 219 Mass. 231, 106 N. E. 974; *Franklin Bank v. Commercial Bank,* 36 Ohio St. 350, 38 Am. Dec. 594; *Hermitage Hotel Co. v. Dyer,* 125 Tenn. 302, 142 S. W. 1117; *First Nat. Bank v. Hawkins,* 174 U. S. 364, 19 Sup. Ct. 739, 43 L. ed. 1007; 2 Fletcher on Corporations, p. 1793, sec. 824; *Oregon R. & Nav. Co. v. Oregonian Ry. Co.,* 130 U. S. 1, 9 Sup. Ct. 409, 32 L. ed. 837; *Central Trans. Co. v. Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. ed. 55; *Small v. Minneapolis Electro Matrix Co.,* 45 Minn. 264, 47 N. W. 797; *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765; *Dunbar v. American Tel. & Tel. Co.,* 224 Ill. 9, 8 Ann. Cas. 57, 115 Am. St. 132, 79 N. W. 423; *Anglo-American Land etc. Co. v. Lombard,* 132 Fed. 721, 68 C. C. A. 89.)    And no corporation can acquire the stock of a foreign corporation unless express statutory authority is found in each parent state and is recited in the articles of incorporation of both such companies.    (*Central Life Securities Co. v. Smith,* 236 Fed. 170, 149 C. C. A. 360; *Golden v. Cervenka,* 278 Ill. 409, 116 N. E. 273; 2 Fletcher on Corporations, sec. 1125; *Hunt v. Hauser Malting Co.,* 90 Minn. 282, 96 N. W. 85; *Allen v. Francisco Sugar Co.,* 92 N. J. Eq. 391, 110 Atl. 37; *Doe Run Lead Co. v. Maynard,* 283 Mo. 646, 223 S. W. 600.)

All transfers of corporate franchises, whether by lease or otherwise, are void unless expressly authorized.    (*McCutcheon v. Merz Capsule Co.,* 71 Fed. 787, 19 C. C. A. 108, 31 L. R. A. 415; *Byrne v. Schuyler Elec. Mfg. Co.,* 65 Conn. 336, 31 Atl. 833, 28 L. R. A. 304; *Thomas v. West*

*Jersey R. Co.*, 101 U. S. 71, 25 L. ed. 950; *People v. Ballard,* 136 N. Y. 639, 32 N. E. 611; *Earle v. Seattle L. S. & E. R. Co.*, 56 Fed. 909.)

Transactions between the trustee and beneficiary—between corporations controlled by interlocking directors or dominating stockholders—are regarded with suspicion and are permitted to stand only when the trustee affirmatively shows that the agreement is entirely fair and advantageous to the beneficiary and that there was no fraud, concealment, undue influence or unconscionable advantage. (2 Fletcher on Corporations, p. 1786, sec. 811; 4 Fletcher on Corporations, p. 3643, sec. 2389; 6 Fletcher on Corporations, pp. 6844, 6845, sec. 4035; 2 Pomeroy's Eq., 4th ed., p. 2039, secs. 956–958; *Harrington v. High,* 39 Ida. 555, 228 Pac. 883; *Jensen v. Sidney Stevens Imp. Co.*, 36 Ida. 348, 210 Pac. 1003; *City Trust Co. v. Bankers' Mortgage Co.*, 102 Neb. 532, 167 N. W. 785; *Mathieson Alkali Wks. v. Arnold, Hoffman & Co.*, 280 Fed. 132; *Bentley v. Zelma Oil Co.*, 76 Okl. 116, 184 Pac. 131; *Farmers' State Bank v. Haun,* 30 Wyo. 322, 222 Pac. 45; *Heimbaugh v. Hitchcock,* 115 Kan. 182, 222 Pac. 114; *Glengarry Consol. Mining Co. v. Boehmer,* 28 Colo. 1, 62 Pac. 839; *Steinfield v. Nielsen,* 12 Ariz. 381, 100 Pac. 1094; *Rice's Appeal,* 79 Pa. 168; *Higgins v. Lansingh,* 154 Ill. 301, 40 N. E. 362; *Doe Run Lead Co. v. Maynard, supra.*)

No beneficiary can be charged by his trustee with laches until the trustee has renounced his trust to the beneficiary's unequivocal knowledge. (*Ryan v. Old Veteran Min. Co.*, 37 Ida. 625, 218 Pac. 381; *Madison v. Madison,* 206 Ill. 534, 69 N. E. 625; *Hovey v. Bradbury,* 112 Cal. 620, 44 Pac. 1077.)

The defense of laches is not available against a continuing breach because all breaches are tacked together and each gives a new cause of suit. (*McConnell v. Combination Mine & Mill. Co.*, 31 Mont. 563, 79 Pac. 248; *Bergman v. Evans,* 92 Wash. 158, Ann. Cas. 1918C, 848, 158 Pac. 961; *Miner v. Belle Isle Ice Co.*, 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Hughes Lumber Co. v. Culver,* 126 Ark. 72, 189 S. W.

850; *Tierney v. Pocahontas Coal Co.,* 85 W. Va. 545, 102 S. E. 249.)

Neither laches nor estoppel constitute a defense against an act of a corporation void for *ultra vires.* (*Central Trans. Co. v. Pullman Palace Car Co., supra; Oregon R. & Nav. Co. v. Oregonian Ry. Co., supra; Roth v. Robertson,* 64 Misc. Rep. 343, 118 N. Y. Supp. 351; *Montgomery Lt. Co. v. Lahey,* 121 Ala. 131, 25 So. 1006.)

Post & Russell and O. C. Wilson, for Respondents.

It is not *ultra vires* for a corporation in failing or in insolvent condition to lease for a term of years or sell all of its property. Neither is it a fraud upon the minority stockholders for the majority of the stockholders and the directors to lease for a term of years or sell all the property of the corporation when the corporation is in a failing or in an insolvent condition. (*Geddes v. Anaconda Copper Min. Co.,* 254 U. S. 590, 41 Sup. Ct. 209, 65 L. ed. 425; *Anderson v. Shawnee Compress Co.,* 17 Okl. 231, 87 Pac. 315, 15 L. R. A., N. S., 846; Cook on Corporations, 8th ed., sec. 662, p. 2527; *Marks v. Merrill Paper Co.,* 203 Fed. 16, 123 C. C. A. 380 (Sale); *Collins v. Penn-Wyoming Copper Co.,* 203 Fed. 726 (Sale); *Cowell v. McMillen,* 177 Fed. 25, 100 C. C. A. 443 (Contract and Lease); *Buchler v. Black,* 213 Fed. 880 (Purchase of Mortgage); *Rhea v. Newton,* 262 Fed. 345 (Sale and Transfer to Creditor); *Bartholomew v. Derby Rubber Co.,* 69 Conn. 521, 61 Am. St. 57, 38 Atl. 45 (Lease); *Theis v. Spokane Falls Gas Light Co.,* 49 Wash. 477, 95 Pac. 1074 (Sale); *Bergman Clay Mfg. Co. v. Bergman,* 73 Wash. 144, 131 Pac. 485 (Sale); *Plant v. Macon Oil & Ice Co.,* 103 Ga. 666, 30 S. E. 567 (Lease); *Cardiff v. Johnson,* 126 Wash. 454, 218 Pac. 269; *Beidenkopf v. Des Moines Life Ins. Co.,* 160 Iowa, 629, 142 N. W. 434, 46 L. R. A., N. S., 290 (Sale); *Smith v. Stone,* 21 Wyo. 62, 128 Pac. 612 (Sale); *Nye v. Storer,* 168 Mass. 53, 46 N. E. 402 (Lease); *Bjorngaard v. Goodhue County Bank,* 49 Minn. 483, 52 N. W. 48; *Merriman v. National Zinc Corp.,* 82 N. J. Eq. 493, 89 Atl. 764.)

While a lease of the property of a corporation to its directors or any one of them is open to suspicion it is not void, and the fact alone that the lessees are directors does not sustain an allegation that it is fraudulent where it is within the powers of the corporation and has been ratified by the stockholders. (*Nye v. Storer, supra; Wainwright v. P. H. & F. M. Roots Co.,* 176 Ind. 682, 97 N. E. 8; *Union Pac. R. R. Co. v. Credit Mobilier,* 135 Mass. 367.)

A stockholder who receives prompt notice of transactions made by the directors which are ratified by a majority of stockholders at regular meetings called for that purpose and then waits eight or nine years thereafter before complaining is guilty of laches and is estopped in his effort to have the transaction set aside. (*Marks v. Merrill Paper Co.,* 203 Fed. 16, 123 C. C. A. 380; *Pigeon River Ry. Co. v. Champion Fibre Co.,* 280 Fed. 557; *Twin Lick Oil Co. v. Marbury,* 91 U. S. 587, 23 L. ed. 328, 3 Morr. Min. Rep. 688; *Hotel Co. v. Wade,* 97 U. S. 13, 24 L. ed. 917; *Sanford Fork & Tool Co. v. Howe,* 157 U. S. 312, 15 Sup. Ct. 621, 39 L. ed. 713; *Indianapolis Rolling Mill v. St. Louis Ft. S. & W. R. R. Co.,* 120 U. S. 256, 7 Sup. Ct. 542, 30 L. ed. 639.)

WILLIAM A. LEE, C. J.—This is an action by Fannie L. Heylman, plaintiff and appellant, on behalf of herself and other stockholders similarly situated and interested, to cancel a lease, certain contracts relating to and modifying the same and subleases made thereunder on mining property in that part of Boundary county that was formerly a part of Kootenai county, and for the appointment of a receiver, and for an accounting of the minerals and ores extracted from said mining claims during the period covered by said leases, to have the several acts of the several defendants, respondents here, mentioned in the complaint, declared fraudulent and void, and that respondents be adjudged to pay appellant and such other stockholders as may join her their proportionate share of the value of the ores and minerals extracted from said mining property by virtue of, under and pursuant to any or either of said contracts or

by reason of their possession, working, mining or operation of said mines.

The late Judge Flynn heard and determined the equitable issues raised by the pleadings except as to the matter of an accounting, and ordered that such accounting be had but made no final decree in the action. Subsequently the case was further heard by Judge McNaughton upon the accounting and by said accounting appellant was awarded a money judgment for her proportionate share of the royalties to be paid by the lessee and his assigns, which sum was found to be, by Judge McNaughton, $918.86, from which judgment no cross-appeal has been taken. Upon the equitable issues heard by Judge Flynn, the judgment was for respondents, and the judgment on the accounting, being for a less sum than that claimed by appellant, she appeals from the judgment and decree in so far as it is adverse to her contention.

Appellant inherited from her father's estate 10,555½ shares of the capital stock of respondent Idaho Continental Mining Company, hereafter referred to as the Minnesota company, which acquired as a basis for its capital stock three lode mining claims, known as the "Jasper," "Continental" and the "Blue Joe." It appears that these mining claims were discovered in 1890; that thereafter Albert Klockmann, C. L. Heitman, Wenz and Weil became the owners of this property as partners, and in 1901 the Idaho Continental Mining Company was organized under the laws of the state of Minnesota, with a capitalization of 1,500,000 shares. Klockmann, with his associates, Heitman, Wenz and Weil, transferred to the Idaho Continental Mining Company all their right, title and interest in and to these lode claims for the entire capital stock of the corporation, under an agreement to return to the treasury of the corporation 750,000 shares. The treasury stock was then sold in various amounts for the purpose of carrying on and developing the mines.

Mr. Lee, the father of appellant, owned 60,000 shares of this stock and died about 1903 leaving six heirs, among whom this stock was divided, giving appellant the said 10,555½ shares, which she received in 1905. As the work

progressed on this property a bonded indebtedness was incurred, the bonds being taken by the stockholders, Lee taking some of them, which were subsequently distributed to his heirs, appellant receiving three of them. Practically all of the capital stock was sold, approximating 1,200,000 shares. In 1905 work was suspended on the property and nothing further was done until 1909, when, on October 9th of that year, at its office in Duluth, Minnesota, a meeting of the directors was held, and a majority of the outstanding stock was represented, and it was agreed to lease the property for two years, from October 1, 1909, to Albert Klockmann, as lessee. While this lease was executed it was never carried out and in 1910 a plan was formed for reviving the operations upon the mining property owned by the Idaho Continental Mining Company, which required it to lease the mining property to Albert Klockmann for a period of twenty years, he, immediately upon receipt of such lease, to assign, set over and transfer the same to a new corporation organized under the laws of the state of Washington, under the name of Idaho Continental Company. The notice of the meeting of stockholders of the Minnesota corporation was sent out in November, 1910, together with a form of proxy to be signed by stockholders who did not intend to be present. It shows the purpose of the meeting, among other things, to consider and act upon the proposition to lease to respondent Klockmann the mining claims for a period of twenty years, at a royalty of five dollars per gross ton, said lease to be immediately turned over to the Washington corporation, and to also consider an escrow agreement relating to the first mortgage bonds of the Minnesota corporation and to consider the plan to turn the stock of the Minnesota corporation into stock of the Washington corporation, giving to the stockholders of the old company the right to make an exchange on the basis of five shares of the old company stock for one share of the new company stock.

Appellant claims not to have received this notice or to have executed the proxy, but the court finds that she did receive the notice and at some time had added her signature

to this proxy but the time of doing so the court was unable to determine. This meeting was held December 15, 1910, and there was present 800,000 shares of the capital stock or a majority of the stock that was then outstanding. The general plan that had been proposed was adopted at this stockholders' meeting. On December 19, 1910, a letter was sent out to the stockholders, signed by the president of the Minnesota company, which contained a statement of the financial condition of said company. It also told of the stockholders' and directors' meeting of December preceding, and what had been done with respect to leasing this property first to Klockmann with the agreement that he should subsequently lease the same to the new company, and it also told of the escrow agreement relating to the bonds and stock of the old company. Among other things, this letter stated that "Said deal, while nominally in the name of Albert Klockmann of Sandpoint, Idaho, is in fact with the Idaho Continental Company, a Washington corporation." The court finds and the evidence shows that appellant received a copy of this letter. Thereafter work on these mining properties was commenced and stock of the new company was sold to new people and all of the old stockholders, excepting appellant, participated in the escrow agreement and availed themselves of the privilege to transfer stock of the old company for stock in the new company.

Contracts were made with the International Smelting & Refining Company of Utah, for an advancement of $125,000, later $75,000 and later further sums totaling $325,000. This money was used in exploring and developing this mining property, constructing a wagon road from the mine to the railroad, a distance of about twenty-six miles, and getting ready to ship the ore, none of which was shipped until 1915. During this time different financial arrangements were made from time to time and stockholders' meetings were held, of which appellant received notice, but she, not having surrendered her stock in the Minnesota company for stock in the new company, was not a stockholder therein. She was ad-

vised from time to time of meetings of the new company and in 1917 she began to make inquiries about the same and began this action in November, 1919, to set aside the entire transaction and at the same time asked for an accounting of the various defendants and claimed that they had been guilty of fraud and misconduct. The court found there was no fraud or lack of good faith in any of these transactions pertaining to leasing the mine, entering into the agreement with the smelting company, or building the twenty-six miles of road to get the ore from the mine to the railroad.

In 1915 the reduction plant at the mine was burned and the smelting company thereafter refused to advance any more money and all further operations were accordingly suspended. At this time, Albert Klockmann, who had been active in all of the foregoing transactions as a stockholder and director in both of these companies, but at the time of the organization of the Washington company had severed his relations with the Minnesota company and did not, at the time of making the twenty-year lease, vote the 100,000 shares of stock which he owned, proposed that the Washington company sublet to Klockmann Brothers, a corporation organized under the laws of Idaho in 1907. Under this sublease the Idaho company undertook to handle this mining property on a royalty basis. It erected a new mill and carried on the work for a couple of years. Of these proceedings, notices were given relating to all transactions, one of which was sent to appellant. During this period ore was shipped from the mine for which a royalty was paid to a trustee by virtue of the leasing agreement made between the Washington company and Klockmann Brothers, the amount of said royalty being determined by returns from the smelter that was receiving these concentrates at its smelting plant at Tooele, Utah. The smelting returns were made out in triplicate, one being given to the trustee, one to the Washington company and the third to the United States government. They were numbered serially and presented in evidence at the hearing on the accounting.

Appellant enumerates twelve points, which cover twenty-six pages of her brief, and approximately 200 citations of authority are made.

It must be apparent that time and space forbid a *seriatim* consideration of all of these assignments, points and authorities. Furthermore, the questions presented by this appeal, in view of the findings of the trial court, are comparatively few and they will be considered without regard to the minute and almost interminable subdivisions that are made in appellant's brief.

Counsel for appellant, at the beginning of their argument, found at page 140 of their brief, say: "The case, reduced to its simplest terms, involves questions pertaining to the validity, *bona fides*, reasonableness and continuity of the 1910 lease and agreement; to the validity and consideration for the Smelter contracts; to the validity, the consideration and the reasonableness of the Klockmann contracts (Group Three); to the question of the breach of the original 1910 contracts in their entirety and the substitution of new contracts; to the question of laches, and to the extent of relief." We agree with counsel that the fundamental question in this case is whether or not the majority stockholders of the Idaho Continental Mining Company, the Minnesota corporation, and the directors thereof, exceeded their powers as stockholders and as directors and whether or not the corporations themselves, acting through their stockholders and directors, did acts which were *ultra vires*.

[1]   While a lease of the property of a corporation to its directors or any one of them is open to suspicion, such act is not void and is not necessarily fraudulent where such action is within the power of the corporation and has subsequently been ratified by the stockholders. (*Nye v. Storer,* 168 Mass. 53, 46 N. E. 402.)

As said in *Geddes v. Anaconda C. M. Co.,* 254 U. S. 590, 41 Sup. Ct. 209, 65 L. ed. 425:

"The rule that owners of a majority of the stock may not authorize the sale of all of the property of a going and not unprofitable company, rests upon the principle that the exer-

cise of such power would defeat the implied contract among the stockholders to pursue the purpose for which it was chartered. But this principle fails of application when a business, unsuccessful from whatever cause, is suspended without prospect of revival, and the law recognizes that under such conditions the majority stockholders have rights as well as the minority and that it should not require the former to remain powerless until the creeping paralysis of inactivity shall have destroyed the investment of both."

Cook on Corporations, 8th ed., sec. 662, p. 2527, says:

"It often happens that a consolidation, lease, sale, or contract between two corporations is made where, first, the directors of one of the corporations are largely interested in the stock of the other; or, second, one corporation owns a majority of the stock of the other; or, third, the same person or persons own a majority of the stock of both corporations. Then there is likely to arise a conflict between interest and duty. Such contracts as these are investigated very closely by the courts. They are not necessarily void, and are not constructively fraudulent. But if there is actual fraud, or if there has been an undue advantage taken or an unconscionable bargain made, the court will set it aside. If the transaction is fair the court will sustain it; if it is unfair the court will undo it."

Announcing the same rule, see: *Cardiff v. Johnson,* 126 Wash. 454, 218 Pac. 269, 222 Pac. 902; *Bergman Clay Mfg. Co. v. Bergman,* 73 Wash. 144, 131 Pac. 485; *Nye v. Storer,* 168 Mass. 53, 46 N. E. 402.

In paragraph ten of the complaint it is alleged that Klockmann and his associates conceived the scheme of acquiring and retaining the control of the Idaho Continental Mining Company and its property, real and personal, for their own benefit in disregard of the rights and interest of plaintiff and other minority stockholders of this company, and with this in view caused the organization of the Idaho Continental Company and the assignment of the lease given to Klockmann, and that he and his associates and said new company concerted together and consummated the design of

divesting the control, use and benefits of said mines and said property from the Idaho Continental Mining Company and its minority stockholders and of excluding plaintiff and the minority stockholders from their just interests in the assets of the Idaho Continental Mining Company and the use of the minerals extracted, shipped and mined from said mine.

With regard to these allegations the court finds that Klockmann and his associates did not conceive the scheme of acquiring and retaining control of the Idaho Continental Mining Company and its property, real and personal, for their own benefit or in disregard of the interest of the plaintiff or other minority stockholders; that they did not concert together or consummate the design of divesting the control, use and benefits of said property from the Idaho Continental Mining Company and its minority stockholders, or of excluding plaintiff and the minority stockholders from their just interests in the assets of said mining company, or of the use of the minerals extracted, shipped or mined from said mine.

Paragraph eleven of the complaint makes similar allegations with regard to the purpose of the organization of Klockmann Brothers, a corporation organized November 9, 1907, which subsequently took over from the Washington company its interest in this lease and reconstructed the reduction plant after it had burned in 1915 and proceeded to carry on the mining operations after the two earlier companies had both failed in such attempt and had apparently become insolvent.

[2] The court, in its eleventh finding, says that the allegations of paragraph eleven of the complaint are not supported by the evidence. We think that the findings of the court, that Klockmann and his associates did not conspire and confederate to defraud the minority stockholders in manner and form as alleged, or otherwise, or at all, is supported by the evidence. When it is considered that the Minnesota company was unable for approximately five years to carry on the business for which it had been organized, having encumbered its property for more than its value and

it being insolvent, its indebtedness being past due and fore-closure proceedings being about to be instituted, the organi-zation of the Washington company and the execution of the escrow agreement offering some prospect of rehabilitating this property and successfully operating it, was a sufficient reason to justify the majority stockholders in entering upon this plan of development.

[3]  The fact that practically all of the stockholders, ex-cepting appellant, agreed to this plan and that she had notice of the same and remained silent so far as taking any action to assert her rights, until the commencement of this suit, some nine years thereafter, fully supports the finding of the trial court that she was guilty of laches in asserting her rights and that the claim had become stale to such an extent that a court of equity ought not to extend her any relief.

The findings and conclusions of Judge Flynn, that appel-lant's complaint and the evidence offered by her in support of the same are not sufficient to afford her any grounds for equitable relief, are affirmed.

[4]  Considering the matter of an accounting heard later by Judge McNaughton, it is sufficient to say that the record discloses that every facility was offered appellant and her accountants to thoroughly examine all the books of account of the several corporations mentioned, including the Inter-national Smelting & Refining Company, which treated all the ore extracted from this mine.  The trial court, after having all of this testimony exhaustively presented to it, found that appellant's share was $918.86.  No sufficient reason is shown why the findings of the trial court should be disturbed, there being substantial evidence to support the same.  We there-fore affirm the findings, conclusions and judgment of Judge McNaughton with respect to the accounting.  Costs to re-spondent.

Wm. E. Lee, Budge, Givens and Taylor, JJ., concur.

Points Decided.

PER CURIAM.—The foregoing opinion, having been written by the late Chief Justice William A. Lee before his death and thereafter concurred in by all the associate justices, is hereby adopted as the opinion of the court.

Petition for rehearing denied.