(No. 7085. November 30, 1943.)

MAUDE SMITH, Respondent, v. CLEARWATER COUNTY and WESTERN HOSPITAL ASSOCIATION, Appellants.

[143 Pac. (2d) 561.]

272

Durham and Hyatt for appellant Western Hospital Association.

Frank F. Kimble for appellant Clearwater County.

B. Auger for respondent.

HOLDEN, C.J.—April 1, 1940, appellant entered into a hospital contract with Clearwater County, Idaho, whereby appellant contracted to provide hospital benefits and accommodations to the employees of that county at its hospital at Orofino in said county, pursuant to and as provided by sec. 43-1108, I.C.A. Among other things, it was mutually contracted and agreed that:

"The said Western Hospital Association, party of the first part, agrees to provide to each and every person employed by the party of the second part in the occupations and locations above mentioned, who shall elect (as did the claimant herein) to receive the benefits of this .agreement

and shall contribute (as claimant herein did) to the association hereunder, all necessary and reasonable medical, surgical and hospital attendance, medicines, nursing, crutches and apparatus by its surgeons * * * :

"1. * * *

"2. * * *

"3. For other injuries received during the employment of such person by the party of the second part (Clearwater County) and while employee is a contributor hereunder * * *

"* * * The refusal of an employee to consult with the association's surgeon or to comply with his instructions as to treatment, or his employment of treatment or care not authorized by the association, shall be considered as a waiver of his rights to and shall disqualify him for further benefits for that condition or its complications."

August 11, 1941, claimant entered the employ of Clearwater County presumably as a stenographer in the office of the prosecuting attorney of that county and by the payment of a contribution as required and provided by said contract became entitled to receive the benefits of such hospital contract. November 29, 1941, claimant sustained an accident consisting of an injury to her right wrist, fracture of left clavicle, as well as injuries to her head and nose. The accident did not arise out of nor in the course of claimant's employment by Clearwater County. It occurred on the public highway near and just a short distance from Orofino. Claimant was immediately taken by ambulance, not provided by either appellant, to the Burns Hospital at Orofino, which hospital was not operated by appellant Western Hospital Association, and there placed under the care of a physician who rendered first aid treatment. December 2, 1941, claimant was taken by ambulance from the Burns Hospital at Orofino to the White Hospital at Lewiston, Idaho, where she remained until the following day and then was transferred to St. Joseph's Hospital in Lewiston. September 14, 1942, respondent filed her petition with the Industrial Accident Board. Her claim for additional medical and surgical treatment is based upon the above mentioned hospital contract. October 21, 1942, a hearing was had before the board. November 10, 1942, findings of fact were made and rulings of law entered thereon and on the same day the following order was entered:

"WHEREFORE IT IS ORDERED, AND THIS DOES ORDER, That the Western Hospital Association forthwith offer to the claimant, Maude Smith, further and additional treatment and attention by physicians and surgeons skilled in and specializing in orthopedics and in conditions such as hers resulting from her accident of November 29, 1941, and for repair and suture of the nerve therein severed in said accident and for the other conditions of her wrist resulting therefrom and for such further hospitalization required therefor at its expense, and .

"IT IS FURTHER ORDERED, AND THIS DOES ORDER, That if the said Western Hospital Association does not within thirty days from the date hereof offer to said Maude Smith or furnish to and provide for her additional and further treatment and attendance by surgeons and physicians skilled in and specializing in orthopedics and in conditions such as hers resulting from said accident sustained by her on November 29, 1941, to her wrist for the repair and suture of the nerve therein severed in the accident and for the other conditions in her wrist resulting therefrom and such hospitalization as may be required therefor, she, the said Maude Smith, may obtain at the cost and expense of said Western Hospital Association additional and further treatment and attendance by physicians and surgeons, skilled in and specializing in orthopedics and in conditions such as hers resulting from her said accident to her wrist for the repair and suture of the nerve therein severed by said accident and for the other conditions in her wrist resulting therefrom and such further hospitalization as may be required therefor, of her own choosing."

The appeal to this court is from the above quoted order.

Appellants contend: that if the board's ruling is sustained it would mean an employee would have the right to seek medical care and attention anywhere he desired; that "The employer (and therefore the hospital contractor), must be given a reasonable opportunity to exercise his privilege and right of furnishing the medical and surgical treatment, and it is the duty of the injured employee to give the employer such opportunity"; that "where the employee obtains his own doctor, the employer is not obligated to offer the services of his physician when he obtains knowledge of the injury"; that "Where an employee obtains other medical and hospital care than that provided for him, he

makes an election releasing the employer"; that "Since appellant made adequate hospitalization, medical and surgical treatment available to the respondent, which she rejected, it is not liable for further treatment"; that "The respondent did not sustain the burden of proof in showing that further medical care would be beneficial."

It will be conceded that generally where an employer provides adequate hospitalization, medical and surgical care for employees by hospital contract, as provided by statute, and an employee makes the required contribution and accepts the benefits of the contract and is thereafter injured, she cannot, if in full possession of her mental faculties, employ her own doctor and seek and obtain hospitalization other than that provided, but here there is substantial evidence that claimant was rendered unconscious in an automobile accident and that she was not fully conscious when she was taken to the Burns Hospital, or when she was taken from that hospital to the White Hospital at Lewiston or when she was transferred to St. Joseph's Hospital.

On direct examination conducted by a member of the board (claimant was not represented by counsel at the hearing), she testified: she did not "remember the accident at all"; that she remembered "being taken out of the Burns Hospital at Orofino"; that she did not remember whether she was taken out on a stretcher and placed in an ambulance; that she gave no direction as to where she was to be driven or taken; that she was unconscious while in that hospital; that "Q. Do you know at whose request or direction you were transferred from the White Hospital to the St. Joseph's Hospital? A. All I know is what I was told that the White Hospital wanted me to be taken out and they made arrangements to have me taken out"; that she was not healed and needed further medical treatment; that the Western Hospital Association had not ·asked nor advised her it was ready and willing to give her any additional treatment; that such hospital had not at any time requested her "to come to Orofino for medical treatment."

On cross-examination claimant testified she guessed her brother-in-law was at the Burns Hospital when she was taken out but did not know; that she did not remember whether her parents were at the hospital at that time; that she presumed they were called there; that she did not remember the trip from the Burns Hospital to the White

Hospital; that she knew before the accident she could go to and receive medical treatment at the hospital of the Western Hospital Association at Orofino; that before the accident she had received treatment at such hospital, to-wit "one cold shot"; that she had met the doctors (Hopkins and Pappenhagen) at that time at the hospital of the Western Hospital Association at Orofino; that she did not recall being moved over to St. Joseph's Hospital; that she was not consulted about an operation at St. Joseph's Hospital; that she did not know "who consented" to the operation; that she did not know whether her folks arranged for the operation or not; that when she "came out from under the ether" her parents and brother-in-law were with her; that she had no conversation with them; that she did not have a conversation with Dr. Braddock about hospitalization at the hospital of Western Hospital Association at Orofino; that she was given first aid at Burns Hospital; that she offered to go to the hospital of the Western Hospital Association at Orofino for further treatment and that Dr. Pappenhagen of that hospital refused to give her any medical treatment; that was in June, 1942; that she "asked him (Dr. Pappenhagen) to take a look at my hand and examine it and if he thought further medical care would help me. He did and he said, 'Yes, further medical treatment would be all right' and could do many things for me and he asked me who my doctor was and I told him Dr. Braddock and he said, 'The best thing for you to do would be to go back to Dr. Braddock.'"

The board found claimant was unconscious when taken to the Burns Hospital at Orofino; that while "still not fully conscious, she was transferred by ambulance to the White Hospital at Lewiston," and that "while she was still not fully conscious she was transferred from said White Hospital to St. Joseph's Hospital at Lewiston." While there is some conflict in the evidence as to whether claimant was unconscious when taken to the Burns Hospital and as to whether she was, or was not, fully conscious when taken from that hospital to the White Hospital and from the White Hospital to St. Joseph's Hospital, this court is committed to the rule that findings supported by substantial evidence is controlling on appeal, and that where there is sufficient competent evidence, if uncontradicted, to support to findings, the findings will not be disturbed. (*Condie v. Swainston*, 62 Ida. 472, 479, 112 P. (2d) 787; *Watkins v.*

*Cavanagh,* 61 Ida. 720, 725, 107 P. (2d) 155; *Bussell v. Barry,* 61 Ida. 350, 353, 102 P. (2d) 280; *Croy v. McFarland-Brown Lumber Co.,* 51 Ida. 32, 39, 1 P. (2d) 189; *Strouse v. Hercules Min. Co.,* 51 Ida. 7, 16, 1 P. (2d) 203; *Aslett v. Evans,* 48 Ida. 206, 209, 280 P. 1036; *Fairbairn v. Keith,* 47 Ida. 507, 511, 276 P. 966; *Heylman v. Idaho Continental Min. Co.,* 43 Ida. 129, 141, 250 P. 1081; *Boise Payette Lumber Co. v. Bickel,* 42 Ida. 245, 250, 245 P. 92; *Clegg v. Eustace,* 40 Ida. 651, 655, 237 P. 438; *Clinton v. Utah Construction Co.,* 40 Ida. 659, 690, 237 P. 427.) Furthermore, this court has uniformly held that where the facts "might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the triers of fact should prevail." (*Estate of Randall,* 58 Ida. 143, 146, 70 P. (2d) 389; *McKissick v. Oregon Short Line Ry. Co.,* 13 Ida. 195, 89 P. 629; *Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 803, 102 P. 897; *Denton v. City of Twin Falls,* 54 Ida. 35, 43, 28 P. (2d) 202; *Call v. City of Burley,* 57 Ida. 58, 69, 62 P. (2d) 101.)

In the condition in which the board found claimant to be at the time of the accident and at the time of her removal from one hospital to another, she could not either personally or through another have employed her own doctor nor sought nor obtained hospitalization at a hospital other than that of appellant Western Hospital Association. Hence, there is no merit in the contention of appellants that claimant employed her own doctor or obtained other medical and hospital care and thereby released appellants.

But, and as above stated, appellants contend "the respondent did not sustain the burden of proof in showing that further medical care would be beneficial."

One of appellants' witnesses, Dr. E. G. Braddock, testified:

"Q. Is there any further medical treatment which would give her more use of that arm?

"A. It is questionable. *It is probably worth trying,* but doubtful as to the end results.

"Q. That treatment would consist of what?

"A. You would have to try to find the nerve, but I doubt if you could find and suture it. The end of the ulna

might have to be removed. I don't think you could do anything with the old fracture." (Emphasis ours.)

Dr. Braddock testified that further medical treatment was worth trying, that, under the contract and all the evidence, facts and circumstances of the case, is sufficient.

It follows the order must be affirmed, and it is so ordered, with costs to respondent.

Ailshie, Budge, Givens and Dunlap, JJ., concur.