**CRANE et al. v. UNITED STATES.**

**No. J–11.**

Court of Claims.

Feb. 8, 1932.

Ernest G. Fifield, of New York City (Joseph M. Hartfield, White & Case, and Graham, McMahon, Buell & Knox, all of New York City, on the brief), for plaintiffs.

Charles B. Rugg, Asst. Atty. Gen. (Percy M. Cox and Chauncey G. Parker, both of Washington, D. C., and R. H. Hallett, of

Philadelphia, Pa., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, WHALEY, and LITTLETON, Judges.

GREEN, Judge.

The plaintiffs in this case are receivers of the property of the Standard Shipbuilding Corporation, and, as set forth in the petition, the suit is brought upon five counts; the last two counts being alternative to the first three. We have no occasion, however, to consider the first three, as the findings of fact and argument of counsel pertain only to the last two counts. By the fourth count, plaintiffs sue to recover the sum of $172,574.47, which was allowed by the Commissioner of Internal Revenue on account of the overassessment of income and profits taxes of the said corporation for the years 1916, 1918, and 1919; and by count 5 the plaintiffs seek to recover $3,921.59 appropriated by an act approved March 3, 1925 (43 Stat. 1587), for the purpose of paying the claim of this corporation for damages incident to the operation of the United States Army.

By defendant's answer it is admitted that the defendant is indebted to the receivers in the sum of $176,496.06 upon the two items above set forth, but defendant also presents a counterclaim in the amount of $1,337,000 with interest at the rate of 5 per cent. per annum from April 30, 1920, being the amount alleged to be due under a bond dated April 30, 1920, and executed by the Standard Shipbuilding Corporation to the United States Shipping Board Emergency Fleet Corporation. The execution of this bond and a breach of the conditions which made its principal sum payable are admitted by plaintiffs, but they contend that defendant has no right to recover thereon. This presents the sole issue in the case.

The plaintiffs make two defenses to the counterclaim of the defendant on the bond. They are as follows:

First, that the United States did not acquire the legal title and ownership of its claim upon the bond until after the appointment of the plaintiffs as receivers for the corporation executing it, and consequently cannot use such claim as a counterclaim or set-off.

Second, that the amount due on the bond is not a debt due the United States upon which it can maintain a counterclaim, or use as an offset in this action.

These two defenses overlap to some ex-

tent, and we shall not attempt to entirely separate them in the opinion, although the one first stated will be first considered.

At the outset, it may be conceded that the Fleet Corporation is a separate and distinct entity which can sue and be sued, but this fact does not control the case, nor is it sufficient for its determination. The ultimate question to be determined is whether the defendant, under the law and the facts in the case, had a right to bring suit upon the bond. Whether the Fleet Corporation could also have brought suit, either solely in its own name or for the use of the defendant, does not need to be determined.

The findings show that the bond upon which the counterclaim is based was made by the Standard Shipbuilding Corporation pursuant to a contract made with the Fleet Corporation, which expressly provided that it should be executed. This contract stated it was executed by the United States Shipping Board Emergency Fleet Corporation, "representing and acting in respect to all matters hereinafter contained for and on behalf of the United States of America (hereinafter called the 'Fleet Corporation')." The mortgage which was executed to secure the bond contained a similar statement. The bond, being made to the Fleet Corporation and not executed by it, naturally would not contain this provision, nor was there any necessity for anything further than had been already stated in the contract to show that, whatever the Fleet Corporation acquired through the bond, it acquired as a corporation representing and acting for the United States, or, in other words, in the transaction it was the agent of the United States and nothing else, and, whatever rights or property it acquired, it acquired for the United States. It should especially be noted that in none of the cases cited on behalf of the plaintiffs was the relation of the Fleet Corporation to the United States so expressly defined.

The case of Sloan Shipyards Corporation et al. v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762, is relied upon by plaintiffs, but we think it has no application. The decision therein applied to three cases, and in the first two the suits were against the Emergency Fleet Corporation. The other was one in which the Emergency Fleet Corporation brought a suit against a trustee in bankruptcy. It will be seen that the nature of these actions was altogether different from the action on the bond upon which the defendant bases its counterclaim and that the

parties thereto were not the same. It was held therein that a cause of action was stated against the Fleet Corporation, and that the Fleet Corporation was liable to be sued for its unlawful acts, but this part of the decision had no application to a suit by the United States upon a bond given to the Fleet Corporation. The court also held that a claim in bankruptcy made by the Fleet Corporation *in its own name* as an instrument of the government is not entitled to preference as a claim of the United States. It is true that the court also said that no importance was attached to the fact that a contract was made with the Fleet Corporation "representing the United States of America," but the opinion gives as a reason therefor that the bill "alleges that it [the contract] was brought about by the wrongful act of the Fleet Corporation," and the court had previously said that, if the act of the Fleet Corporation was unlawful, a remedy could be had against the agent that did the wrongful act. We think it clearly appears that the court was considering circumstances altogether different from those shown to exist in the case now under consideration.

■■ The case of United States Shipping Board Emergency Fleet Corporation v. Wood, Trustee (C. C. A.) 274 F. 893, in our opinion cannot be regarded as an authority on the question of whether the government may bring suit on a bond executed to the Fleet Corporation as an agent for the United States. The case last cited was one of the three which were reviewed by the Supreme Court in the Sloan Shipyards Corporation Case, supra. The judgment of the Circuit Court of Appeals was affirmed, but the Supreme Court did not approve the language of the lower court upon which counsel for plaintiffs rely.

The case of the United States v. Skinner & Eddy Corp. (D. C.) 28 F. (2d) 373, holds directly that the United States is the real party in interest and entitled to sue to recover overpayments made by the Emergency Fleet Corporation under contracts for the construction of vessels, which contracts disclosed that the Fleet Corporation was acting as agent for the United States. It was also held therein that the contract of the agent is the contract of the principal, and the principal may sue thereon. A contrary rule was laid down in United States v. Matthews (C. C. A.) 282 F. 266, but the opinion in the later case of United States v. Skinner & Eddy Corp., supra, in effect overruled the decision in the Matthews Case. In the case of Gilbert

v. United States, 60 Ct. Cl. 1005, in which it appeared that the claimant sued for amounts alleged to be due on contracts made with the Fleet Corporation, the government was permitted to recover on a counterclaim alleging overpayment by the Fleet Corporation. Certiorari was denied in this case (271 U. S. 660, 46 S. Ct. 473, 70 L. Ed. 1137), and, in other cases decided by this court, the right of the United States to recover on a counterclaim based upon a contract made with the Fleet Corporation has been maintained. We think it unnecessary to pursue this branch of the case farther, except to say that the general rule is that, where a party has made or entered into a contract as agent for another, the rights contracted for by the agent become vested in the principal, and the principal acquires the right to bring suit upon the contract. See 2 C. J. 895, § 594, and cases cited in notes referred to therein; also Mechem on Agency (2d Ed.) § 2055, and cases cited in note 4.

We do not think it is necessary to discuss the other cases cited by counsel for plaintiffs. In some of them expressions may be found which, taken by themselves and alone, are not in accord with the rules that we have above laid down, but much of the argument of counsel for plaintiffs and some of the decisions cited overlook the main question in the case at bar and the point upon which the decision herein must turn. It seems to be assumed that, if it should be held that the Fleet Corporation is a separate entity, capable of suing and being sued, this fact alone will preclude the government from bringing an action upon a contract entered into by the Fleet Corporation. This is clearly an error. If the facts in the case show that the Fleet Corporation acted as an agency for the government in making the contract and receiving the bond, which fact was disclosed to the other party contracting with the Fleet Corporation, then under the well-established rules with reference to agency the government is entitled to bring suit upon the contract, and the fact that the Fleet Corporation was a separate entity is entirely immaterial. In laying down this principle, we are only applying a rule which would prevail if private parties were concerned—a rule which would apply even if a purely private corporation was acting as the agent of the government.

The contention made on the part of the plaintiffs that the only rights that the defendant acquired in the contract were received by virtue of an assignment which was not made until after the appointment of the

receivers is also disposed of by the rule which has been above laid down. Under that rule, its rights as principal were acquired from the moment the bond was executed, and it had the right to bring suit thereon when its conditions were broken, which was before the receivers were appointed. All of the rights of the defendant in and to the bond were acquired prior to the time the receivers were appointed, and were not affected thereby.

The case of Skinner & Eddy Corp. v. McCarl, 275 U. S. 1, 48 S. Ct. 12, 13, 72 L. Ed. 131, does not support plaintiffs' contention, but is plainly to the contrary. In the opinion, it is stated with reference to the claim then under consideration that "the United States is the owner, *either* as principal *or* as assign of the Fleet Corporation" (italics ours); and another statement contains a clear implication that the government has the right to sue on the contracts made by the Fleet Corporation, for it is said that "the Merchant Marine Act did not modify section 951 of the Revised Statutes [28 USCA § 774] or impair the right of a defendant to a credit, if sued by the United States upon a Fleet Corporation contract."

We think also that under the provisions of the Merchant Marine Act (41 Stat. 988), by which all of the property and rights of the Fleet Corporation were transferred to the Shipping Board which was a department of the government, the interests of the Shipping Board in the bond in suit would in any event become vested in the defendant at the time this act became a law, which was prior to the time of the appointment of the plaintiffs as receivers, but, in view of what we have said above, it is not necessary to rest the case on the provisions of the statute which created the Fleet Corporation and disposed of its property. The agency of the Fleet Corporation having been both established and disclosed, we hold that the defendant had a complete right to bring an action by counterclaim on the bond and offset any amount recovered thereon against the claim of the plaintiffs herein, unless prevented by the fact that the bond was executed under seal by the Standard Shipbuilding Corporation. Whether the addition of a seal to the signature of the Fleet Corporation affixed to the bond precluded the defendant from bringing suit upon this instrument will next be considered.

■■ It is contended on behalf of the plaintiffs that defendant cannot bring an action upon the bond in question because it is not a simple contract, but one made under seal and executed in the state of New York, where the courts hold that an instrument under seal cannot be enforced by or against one who is not a party to it.

The principle laid down by the New York courts is a relic of ages long past when much importance was attached to the employment of a seal as a means of distinguishing the person who executed the instrument to which it was attached. With the growth of education, the signature to an instrument has become more important than the seal. In some jurisdictions, seals have been entirely abolished by statute, and modern decisions tend strongly to minimize, or to entirely do away with, the old distinctions between sealed and unsealed instruments. See 35 Cyc. p. 1168, II. The addition of a seal to the bond in suit was needless and of no benefit to the Fleet Corporation or the defendant, but, on the contrary, harmful to the defendant, if the rule invoked by plaintiffs is enforced. Under such circumstances, many courts have held that the presence of the seal is without effect upon the rights or liabilities of either party to the contract, and may be treated as surplusage. Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 A. 251, and cases cited therein. In J. H. Hayes Woolen Co. v. McKinnon, 114 N. C. 661, 19 S. E. 761, where a bill of sale stated that the consideration was paid by "W. agent," etc., for plaintiffs named, it was held that principals could bring an action on the contract, although it was under seal and signed simply in the name of the agent.

In an amendment to the plaintiffs' brief, the case of United States v. New Amsterdam Casualty Co. (D. C.) 52 F.(2d) 148, is cited to show that the rule for which the plaintiffs contend is followed, not only by the New York courts, but by the federal courts as well in cases based upon contracts similar to the one in the instant case. The New Amsterdam Case, supra, appears to be in point and to have been carefully reasoned so far as the court went in the matter, but we think a number of considerations were overlooked, and therefore cannot regard the case as controlling.

The rule is well established that the right to set-off is controlled by the law of the forum in which the suit is brought and not by the law where the contract was made. It is therefore for us in this case to use the law which is applicable to the particular circumstances of this case in a court sitting in the District of Columbia and created for the purpose of determining the validity of claims against the government. For this reason we do not con-

sider the case last cited to be controlling, but, even if we are wrong in this, many other reasons appear to us why the New Amsterdam Case, supra, should not be followed. Among the most important of these reasons is the fact that it is grounded upon what is said to be "the general rule that a person not a party to a sealed instrument can not sue upon it," and this rule is treated as if it had no exceptions. We have shown above to the contrary, that there is no such general and absolute rule, and that, when a principal sues upon a contract executed under seal by his agent, where the seal is unnecessary, many, and probably most, authorities regard it as surplusage. Nor is the rule well settled even in New York. In Stanton v. Granger, 125 App. Div. 174, 109 N. Y. S. 134, Justice Gaynor strongly dissented from the rule laid down in the New Amsterdam Case, supra, contending that, as the seal was unnecessary, the contract was a simple one, and even an undisclosed principal could sue thereon. In this dissent another justice concurred.

It should be noted also that in the New Amsterdam Case, supra, the court stated that the agency of the Fleet Corporation for the United States as principal was not disclosed. Whatever may have been the language of the contract in that case, the contract under which the bond in suit was given plainly discloses the relationship of the Fleet Corporation to the defendant with respect to all matters provided for in the contract, including the bond in suit.

It would seem that, if all rights and interests arising under the bond were vested in the government as we consider we have shown, and the defendant is the proper party to bring suit upon the bond, this fact would prevent the application of the rule with reference to sealed instruments for which the plaintiffs contend. In any event, we think the question should be considered in the light of modern jurisprudence, the tendency of which is to disregard forms and technicalities which are founded upon no reason, supported by no useful result, and which accomplish nothing except in some instances to defeat the ends of justice as would happen in this case if the principle contended for were followed. As an abstract matter of equity, the defendant ought to be permitted to recover on the bond in this case, and we think its right to recover ought not to be defeated by a barren technicality which has never been enforced in the District of Columbia and which, if enforced, would defeat the ends of justice.

The ultimate question is what remedies are available to the parties when the suit is brought in the District of Columbia. It was long ago held by the Supreme Court in Bank of the United States v. Donnally, 8 Pet. 361, 372, 8 L. Ed. 974, a case which involved the effect of the addition of a seal that, while the nature, validity, and interpretation of contracts are to be governed by the law of the country where the contracts are made, or are to be performed, "the remedies are to be governed by the laws of the country where the suit is brought; or, as it is compendiously expressed, by the lex fori." To the same effect is the decision in LeRoy v. Beard, 8 How. 451, 12 L. Ed. 1151. See, also, Steele v. Curle, 4 Dana (Ky.) 381; Trasher v. Everhart, 3 Gill. & J. (Md.) 234; Dorsey v. Hardesty, 9 Mo. 157; Douglas v. Oldham, 6 N. H. 150.

So far as we are aware, there has been no decision which fixes the rule applicable in the District of Columbia. The contention of plaintiffs finds no support in reason, nor is there any foundation in equity for applying the rule. On the contrary, the application of the rule in this case would be to work injustice and inequity. The Standard Shipbuilding Corporation must have understood perfectly that the bond was executed in behalf of the defendant. In numerous cases we have held the government responsible for the contracts made by the Fleet Corporation, and, if conditions were reversed, we have no doubt we should have the plaintiffs in the case at bar asking that the government be required to perform the contracts made by that body. There is absolutely nothing in the evidence to indicate that the parties intended that any limitation should be placed on the right of the government to bring suit under the contract by reason of the seal placed on the instrument creating it. The practical effect of the execution of the bond was merely that of a promissory note, and, had a promissory note been given secured by a mortgage instead of the bond, we hardly think there would be any contention that the defendant could not bring suit thereon. The only reason that can be given for denying the government the right to bring suit on this bond is that under an ancient custom, established at a time when seals had quite a different meaning and different use, courts gave a sanctity to a seal and drew conclusions from its use which, as we think, cannot be justified under modern conditions. We therefore hold that the defendant is not precluded from setting up the counterclaim on the bond.

For the reasons above stated, we hold that

the defendant is not prevented from bringing action on the bond by the fact that it was executed under seal; also that all rights and interests that arose by virtue of the execution of the bond became vested in the defendant, including the right to sue thereon, and that no assignment was necessary to convey to defendant this right. It follows that defendant is entitled to offset against the amount due the plaintiffs on overassessment of taxes the sum due on the bond, and, as the latter is greater in amount, defendant is entitled to recover the excess with interest.

The findings show that the amount due on the bond was secured by a mortgage on certain property of the corporation for which the plaintiffs are now receivers. No action is requested by defendant with reference to the mortgage, presumably for the reason of lack of jurisdiction. The judgment herein rendered will merely establish the amount of defendant's recovery on the bond. Whatever further rights the defendant may have must be passed upon by another court.

We have already shown that defendant's answer admits that plaintiffs are entitled to recover the sum of $172,574.47 on account of taxes overassessed and collected and also $3,921.59 under a congressional act, or a total of $176,496.06. Plaintiffs ask for interest on the amount of the taxes so overassessed for the years 1916, 1918, and 1919, but the evidence fails to show facts which would entitle plaintiffs to any interest under the Revenue Act of 1921,[1] which is controlling. In this connection it should be noted that the first installment of the bond in the amount of $267,400 fell due on April 30, 1921. The defendant is entitled to recover the amount of the bond, $1,337,000, less the total amount allowed plaintiffs, which, being deducted, leaves defendant entitled to recover $1,160,503.94, with interest thereon according to the terms of the bond at 5 per cent. per annum from April 30, 1920, and judgment will be rendered accordingly.

WHALEY, Judge, took no part in the decision of this case on account of illness.

---

[1] The certificate of overassessment was issued by the Commissioner of Internal Revenue about May 13, 1924. The act of 1924 was not approved until June 2, 1924.