CHERRY COTTON MILLS, Inc., v.
UNITED STATES.

No. 45885.

Court of Claims.

March 5, 1945.

ence, Florence, Alabama, for a loan of $110,000, to be evidenced by a note secured by certain collateral, with the understanding that the bank would request the Reconstruction Finance Corporation to agree to purchase a participation in the note. As a result of the negotiations, as set forth at length in the special findings of fact, the plaintiff executed a note for $110,000, with interest at 5 percent per annum and mortgaged certain securities therefor. The bank made the loan secured by the mortgage and the R. F. C. purchased a two-thirds interest in the loan. There was a default by the plaintiff and the mortgage was foreclosed in 1939 and the mortgaged assets were bid in by the bank and the R. F. C. for $100,000, and the R. F. C. received a sixty-six and two-thirds interest and the bank the other thirty-three and one-third interest in those assets. There remained due to the R. F. C. and the bank in their respective interests of two-thirds and one-third, the sum of $8,945.25—$5,963.51 to the R. F. C. and $2,981.74 to the bank.

The plaintiff had paid processing and floor stock taxes as a cotton processor under the Agricultural Adjustment Act to the Collector of Internal Revenue for the District of Alabama in the sum of $3,104.87. The plaintiff, after the Agricultural Adjustment Act was declared unconstitutional, filed a claim for this amount, and a check dated August 17, 1942, was issued to it in payment of its claim. This check was stopped by the Disbursing Officer of the Treasury and, under the direction of the General Accounting Office, a check was issued to the R. F. C. in partial liquidation of the indebtedness of the plaintiff to the R. F. C., leaving a balance of $2,858.64 remaining due to the R. F. C. upon the debt of $5,963.51 which the plaintiff owed it.

No part of the processing and floor stock tax had been included in the collateral given to the bank or the R. F. C. to secure the original loan. Whether or not the plaintiff had paid the Florence Bank the $2,981.74 which it had owed the Bank since 1939, when this set-off was made, or has paid it since that time, we are not informed.

The foregoing recital shows the following facts: In 1942 the plaintiff was indebted to the R. F. C. in the sum of $5,963.51, and the Government was indebted to the plaintiff in the sum of $3,104.87. A check to pay the latter debt was issued by

Theodore B. Benson, of Washington, D. C., for plaintiff.

E. E. Ellison, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (Julian R. Wilheim, George E. Heidlebaugh, and S. R. Gamer, all of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff in 1936 made an application to The First National Bank of Flor-

the Government, but, before it was cashed, the plaintiff's debt to the R. F. C. came to the attention of the officers of the Government, and the check was recalled from the plaintiff and another check, for the same amount, payable to the R. F. C. was issued to and collected by the R. F. C. It credited the plaintiff with the payment of $3,104.87 upon the plaintiff's debt to it.

We think that the plaintiff should not, in these circumstances, have a judgment against the Government. The effect of the payment of such a judgment would be to cancel the credit which the R. F. C. has given the plaintiff upon its debt to it, and restore the plaintiff's debt to the R. F. C. to its former amount $5,963.51. The plaintiff's net worth would be exactly the same as it is now, and, since its debt to the R. F. C. is long past due, it would be, as it has long since been, under a duty to pay the R. F. C. not only the $3,104.87 which it would recover from the Government, but enough more to discharge its debt in full to the R. F. C. If it did its duty in this regard, the $3,104.87 would then be, in effect, where it is now, i. e. among the assets of the United States. So our exercise of our functions would have been a sheer waste of the time and energy of ourselves and of those who have participated in this litigation on the part of the plaintiff and the Government. Only by assuming that the plaintiff will take the judgment money and will not pay its debt to the Government could we say that a judgment for the plaintiff had accomplished anything other than circumlocution, and on this assumption, our accomplishment would seem to have been less than worthy of our effort.

■ The R. F. C. is an agent of the Government, a device for accomplishing the Government's purposes with the Government's money. The text of the statute creating the R. F. C., 47 Stat. 5, 15 U.S. C.A. §§ 601–617, makes this plain. The Government's assets and credits stand behind the R. F. C.'s obligations, and the R. F. C.'s losses are the Government's losses. Debts owing to the R. F. C. are owed to it as agent and trustee for the Government. We use the word trustee since the R. F. C. does have the legal capacities of a separate legal person, to own property and to sue and be sued. But these powers and capacities are hold by it in trust for the benefit of one sole beneficiary, the Government. Looking through the trust, the assets and claims held by the R. F. C. are, in substance and in equity, assets and claims of the Government which are kept, for convenience, in a different receptacle from the one in which the Government keeps most of its money, viz., the Treasury.

Cases holding that the R. F. C. is liable for costs, as other litigants are, Reconstruction Finance Corporation v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595, or that the Federal Housing Administration is subject to garnishment under state law for wages due to an employee, Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724, are not of significance in the solution of our problem. The Supreme Court in those cases was only deciding what Congress meant when it endowed Government corporations with the capacity to sue and be sued. It held that Congress intended that they could be sued like private persons, and that sovereign immunity from suit was waived. But no court has decided that Congress has shown any intention that the United States must pay out money to one who is indebted to it, through its agent and trustee, in a greater amount on a debt past due. That would not be a waiver of sovereign immunity, but a subjection of the sovereign's finances to risks and inconveniences to which no private person is by law subjected.

■ We do not regard as material the part which the General Accounting Office played in the transactions here in question. We think it was the duty of someone, on behalf of the Government, to see that this set-off was made. Whether the statute defining the functions of the Comptroller General lodged that duty there, or not, is a matter which would seem to be no concern of the plaintiff. It had no right to collect money from the United States when it owed a past due debt to the United States. How the Government, inside its own organization, took care that its right of set-off should not be overlooked, in its multiplicity of transactions, is not material. In short, we think that the money for which the plaintiff sues is now where it rightfully and lawfully belongs, and should stay there.

■ We have given the Government a judgment on its counterclaim for the balance, above the $3,104.87 already set off and credited to the plaintiff, which the plaintiff owes the R. F. C. The R. F. C.

could not have sued in this court for that balance. But the plaintiff has in this court sued the R. F. C.'s principal and beneficiary, the United States, so we have the real parties in interest before us. We see no reason why we should not, in the rational and economical administration of justice, dispose of their claims completely. When the plaintiff pays the United States the judgment which we have given the United States on its counterclaim, the plaintiff will, of course, have a complete defense against any claim by the R. F. C., and will not be concerned about how the Treasury and the R. F. C. record the transaction on their books.

In the case of Crane et al., Receivers, v. United States, 55 F.2d 734, 73 Ct.Cl. 677, certiorari denied 287 U.S. 601, 53 S. Ct. 7, 77 L.Ed. 523, this court allowed the United States to recover a judgment on a counterclaim against a plaintiff who sued for the refund of taxes, and who had given a bond to the United States Shipping Board Emergency Fleet Corporation. It held that whether or not the Fleet Corporation was an entity separate from the United States was immaterial. The contract which the bond was given to secure, recited that the Fleet Corporation was representing and acting for and on behalf of the United States. In the case of John Morrell & Co. v. United States, 89 Ct.Cl. 167, this court held that the fact that a contract made by the Federal Surplus Relief Corporation did not disclose that it was acting as the agent of the United States, was immaterial since the facts concerning its agency were apparent from the statute creating it, and from the known purpose of its organization. We think those cases were rightly decided.

The defendant may recover upon its counterclaim. Entry of judgment will be suspended to await the computation of the amount of the interest to be included in the judgment.

It is so ordered.

LITTLETON and WHITAKER, Judges, concur.

WHALEY, Chief Justice, dissents.

JONES, Judge, took no part in the decision of this case.