492 P.2d 43

Ermal WEATHERBY and Chloe Weatherby
Johnson, Plaintiffs, Respondents
and Cross-Appellants,

v.

WEATHERBY LUMBER COMPANY, Inc.,
and William Weatherby, Defendants,
Appellants and Cross-Respondents.

No. 10439.

Supreme Court of Idaho.
Jan. 6, 1972.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for appellants.

Ambrose, Fitzgerald & Longeteig, Meridian, for respondent Ermal Weatherby.

Clemons, Skiles & Green, Boise, for respondent Chloe Weatherby Johnson.

McQUADE, Chief Justice.

The defendant, William Weatherby, originally entered into the lumber business in 1943 with his father. He and his father continued in business until 1946, at which time his father died. The business at that time was worth approximately $1,500 and the father and son each had ½ interest. The defendant son continued in the lumber business, and in 1953, the defendant incorporated the Weatherby Lumber Company and issued 177 shares to himself and 140 shares to Sarah Weatherby, his mother. This evidently was to represent the share of the business owned by the deceased father.

The plaintiffs, Ermal Weatherby and Chloe Weatherby Johnson and the defendant William Weatherby are brothers and sister. The case involves three corporations—the Weatherby Lumber Company, the Weatherby Planing Company, and the Weatherby Logging Company, all of which were incorporated in the early 1950's. In directly, another corporation called Weatherby Ranches, Inc., is involved. Defendant William Weatherby was the majority stockholder of the lumber company and the sole stockholder of the planing, logging and ranch companies. Defendant Weatherby owned 55.8% of the lumber company and the plaintiffs each owned 22.1%, having inherited the stock from their mother. Defendant William Weatherby was the manager and director of each of the corporations involved. The mother, Sarah Weatherby, whose shares were left at her death to the plaintiffs, was an officer and director of the lumber company. The mother took no active part in the business of the company except that she received a salary as a director. Neither Ermal nor Chloe took an active part in the management of the corporation.

Defendant William Weatherby purchased the stock of the plaintiffs (his brother and sister) in the lumber company. However, defendant William failed to disclose to his brother or his brother's attorney-agent or his sister, who was not represented by counsel, that a possible sale of that corporation was being negotiated. William was negotiating a package sale of the three lumber related corporations. Ermal Weatherby prior to and at the time the lumber company was sold, was an employee performing unskilled labor and was not active in the management. Ermal Weatherby's shares of stock were attached by the sheriff for child support. However, the shares so attached were never sold at an execution sale. The defendant, William Weatherby, after turning the shares of the stock over to the sheriff contacted Ermal Weatherby's attorney and offered to purchase the shares of stock. The attorney-agent was duly authorized by Ermal Weatherby to negotiate with William Weatherby regarding the sale of the attached shares of stock. The attorney-agent inquired of William Weatherby as to their value. William stated the value to be "book value." During the negotiations for the sale of stock William made no disclosure to either his brother Ermal or Ermal's attorney-agent regarding the possible sale of the assets of the lumber company.

Defendant William sold the Weatherby Planing Company and the Weatherby Lumber Company in which his brother and sister had an interest to the Boise Cascade Corporation. The result was one lump sale's proceeds amount without allocation of the proceeds among the various corporations. Weatherby Planing Company did not sell Weatherby Ranches, Inc., to Boise Cascade.

The trial court held that the defendant breached his fiduciary duty to disclose the pending sale negotiation at the time he purchased the plaintiffs' stock. To determine the value of the stock the trial court used the book value method. The trial court determined that each of the plaintiffs was entitled to $28,258.51 or 22.1% of the sale proceeds of $127,866.00 it allocated to the lumber company. Because Ermal had been paid $15,490.00 for his shares, the trial court awarded judgment in his favor in the amount of $12,768.51. Chloe received $25,000.00 for her interest from William and she was therefore awarded $3,258.57.

The defendant has assigned error to the trial court finding that a fiduciary relation existed between he and his brother. The defendant's appeal is not from that portion of the judgment regarding his sister. The plaintiffs have cross-appealed on the grounds that, in allocating the sale proceeds, the trial court used the wrong method or, alternatively, the method used by the trial court was improperly applied and calculated.

### I.

We will deal initially with the defendants' appeal. Defendants have first assigned error to the trial court's finding that a confidential or fiduciary relationship existed between the plaintiff, Ermal Weatherby, and the defendant William Weatherby. A pertinent statute is I.C. § 30–142 which states that:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

The term "corporation" in I.C. § 30–142 has been interpreted and expanded by this

Court. In Hanny v. Sunnyside Ditch Co.,[1] this Court stated that:

"[I]n the light of I.C. § 30–142, which points out that directors stand in a fiduciary relation to the corporation, and, *hence, to the stockholders,* and any attempt on the part of one of the directors to acquire property of the corporation for personal profit or interest would be in violation of this section of the law." (Emphasis added.)

In Idaho a director has a fiduciary responsibility to both the corporation and to shareholders. Failure of defendant William to disclose the negotiations for the sale and liquidation of the assets of the lumber corporation was a breach of his fiduciary responsibility to the other stockholders. The case of Fox v. Cosgriff,[2] under facts similar to the case at bar, stated that:

"[I]t was the duty of appellants, and particularly Thamm, as director and cashier, to disclose the fact that the bank was being liquidated, or in the course of negotiations looking to its liquidation which, if consummated, would result in enhancing the value of the stock."

Appellants next assign error to the trial court's finding that there was a duty of disclosure of the information concerning negotiations for a sale which had not been finalized. The fact that negotiations with Boise Cascade had not been finalized is immaterial to the issue of failure to disclose. The duty to disclose was breached when William Weatherby purchased the shares of stock from his brother and sister without disclosing the negotiations for sale, the culmination of which would result in enhancing the value of the stock. The duty was breached at that point; it was immaterial whether or not the sale was finalized.[3]

The next point relates to appellants' allegation that a fiduciary duty to

---

1. 82 Idaho 271, at 276, 353 P.2d 406, at 409 (1960).

2. 66 Idaho 371, at 382, 159 P.2d 224, at 229 (1945).

3. *See e. g.,* Fox v. Cosgriff, *supra,* note 2.

disclose is suspended when a minority shareholder employs counsel. Persons dealing with an agent of a disclosed principal must act toward the agent the same as though the principal himself were personally involved. A third person is liable to the principal for any alleged wrongs practiced upon the agent, including misrepresentations or breach of any duty imposed by law. The fact that an agent is acting on behalf of a disclosed principal does not affect any rights, liabilities, or duties as between the principal and the purchaser.[4]

■ The appellants next assign error to the trial court's finding that there was a duty to disclose where the information in question concerns the value of stock which was subject to be sold at an execution sale. A sale at execution never took place in this case and we have not been cited authority for appellants' position. There is authority to the effect that an execution sale if not brought about or controlled by the purchasing fiduciary, was made in good faith and fair dealing, and the purchase was for adequate consideration—such person in a fiduciary position may purchase corporate property at a judicial or other public sale.[5] But this authority does not reflect the same situation as the case at bar. Here there was no judicial or public sale of the stock. The fact that Ermal Weatherby's stock had been attached by the sheriff did not excuse William Weatherby from his failure to disclose to his brother or his brother's attorney the information regarding the sale negotiations with Boise Cascade.

## II.

■ On cross-appeal, the plaintiffs assign as error the trial court's findings as to the fairness of the inter-corporate dealings, and the court's reliance upon the "book value" method of allocating the lump sum proceeds of the sale of the three corporations. Transactions between a corporation and its directors, while not void or necessarily fraudulent, are open to suspicion and receive close judicial scrutiny.[6] Similarly, dealings between the corporation and other corporations, all sharing an officer or controlling shareholder, are carefully examined for unfairness. The general rule governing burden of proving fairness in such cases was given fullest expression by the United States Supreme Court in Geddes v. Anaconda Copper Mining Co.:[7] "[W]here the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where sale is involved the full adequacy of the consideration." In the present case, Ermal and Chloe Weatherby contend that William's failure to prove the entire fairness of inter-corporate sales from 1954 to 1966 destroys the validity of the book value method of allocating proceeds from sale of the companies.

■ We believe the *Geddes* rule should not apply where those challenging the transactions on appeal failed adequately to frame the fairness issue at trial. In each case cited by cross-appellants to illustrate application of the *Geddes* rule, the plaintiff shareholders proved or pleaded unfairness. In Illinois Oil Co. v. Pender[8] and in *Geddes* itself, the courts of appeal found the evidence sufficient to uphold findings of fraud below. In Felty v. National Oil Co. of Texas,[9] shareholders presented sufficient evidence of unfairness to render improper a peremptory instruction to dismiss. In Mayflower Hotel Stockholders' Pro-

4. State, by and through Public Welfare Commission v. Bonnett, 114 Utah 546, 201 P.2d 939, 943 (Utah, 1949), citing the American Law Institute Restatement of the Law of Agency, § 292; Crane et al. v. United States, 55 F.2d 734, 737 (1932); see also: 3 C.J.S. Agency § 275.

5. McDougall v. Citizen's National Bank, 265 Pa. 170, 108 A. 608, 609 (1919).

See also: 19 Am.Jur.2d Corporations, § 1316.

6. Heylman v. Idaho Continental Mining Co., 43 Idaho 129, 250 P. 1081 (1926).

7. 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425 (1921).

8. 137 Okl. 82, 277 P. 1026 (Okla.1929).

9. 155 S.W.2d 656 (Tex.Civ.App., 1941).

tective Committee v. Mayflower Hotel Corp.,[10] dismissal below for failure to state a cause of action was reversed because the stockholders pleaded, in factual detail, the unfairness of the inter-corporate transactions.

In this case cross-appellants neither pleaded nor adduced evidence to show that the 1954–1966 transactions were unfair. They alleged no unjust enrichment of appellant's two corporations at the expense of their own. In such a case, the corporate director is not required, *sua sponte,* to prove a negative.[11] Indeed, because the issue was not clearly raised at trial, the lower court was not afforded a fair opportunity to rule. Such an issue will not be reviewed on appeal.[12]

■ Moreover where a director has been authorized by the shareholders to conduct the transactions in question for the benefit of the corporation, the burden of proving the unfairness of such dealings rests with the beneficiaries. This exception to *Geddes* was established by Chief Judge Learned Hand in Ewen v. Peoria & E. Ry. Co.,[13] and it remains fully authoritative today.[14] We believe authorization by the shareholders may take the form of a prior grant of power in the corporate charter as it did in *Ewen,* or it may be evidenced by prolonged stockholder acquiescence.[15] From 1954 to 1966 Ermal and Chloe retained the benefits of part ownership, but left all management responsibilities and burdens to their brother, evidencing William's author-

ity to conduct those transactions. Because the attack on the fairness of the sales is defective, the book value method of allocating proceeds of sale of the companies remains unimpeached.

■ Cross-appellants also argue, in the alternative, that even if the book value method is correct, it was inaccurately computed in this case. The calculation of damages below turned on several rather opaque and disjointed accounting exhibits. Related testimony did not fully explain their meaning. Rather than substituting our interpretive analysis for that of the trial court, we believe the case should be remanded on the issue of damages for proceedings to clarify the data and accounting practices used to compute the lumber company's book value. The trial court may then modify the award of damages if the evidence so requires.

The trial court's holding that defendant William Weatherby bears liability for breach of fiduciary duty is affirmed on appeal. Election of the book value method to compute damages is approved on cross-appeal; but the actual award of damages is reversed and remanded for further proceedings to ascertain true book value.

Costs to respondents and cross-appellants.

McFADDEN, J., and SCOGGIN and LODGE, DJJ., concur.

SPEAR, J., sat at the hearing, but retired before the writing of the opinion.

10. 84 U.S.App.D.C. 275, 173 F.2d 416 (D.C.Cir. 1949).

11. Cf. Kaufman v Wolfson, 153 F.Supp. 253 (S.D.N.Y.1957).

12. E. g., Willows v. City of Lewiston, 93 Idaho 337, 461 P.2d 120 (1969).

13. 78 F.Supp. 312 (S.D.N.Y.1948) ; cert. denied, 336 U.S. 919, 69 S.Ct. 642, 93 LEd. 1082 (1949).

14. *See,* e. g., Moses v. Burgin, 316 F.Supp. 31 (D.Mass.1970).

15. A parallel rule is embodied in the theory of ratification. *See* Portland Cattle Loan Co. v. Hansen Livestock & Feeding Co., 43 Idaho 343, 251 P. 1051 (1926) ; Pettengill v. Blackman, 30 Idaho 241, 164 P. 358 (1917).