716 P.2d 1282

Kenneth **STEELMAN,**
Plaintiff-Respondent,

v.

Larry D. **MALLORY,** O. Richard Jensen, and **L.D.K., Inc.,** an Idaho corporation, Defendant-Appellants.

No. 15619.

Supreme Court of Idaho.

Feb. 21, 1986.

Rehearing Denied April 29, 1986.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, and Thomas H. Church of Church, Church, Snow & Tuft, Burley, for defendants-appellants.

Roger D. Ling of Ling, Nielsen & Robinson, Rupert, for plaintiff-respondent.

BAKES, Justice.

Steelman, a minority shareholder, filed a complaint alleging breach of fiduciary duty by the majority shareholders/directors in the management of L.D.K., Inc., a closely held corporation. Mallory, Jensen and L.D.K., Inc., appeal from a judgment awarding Steelman $10,220.22 in damages, $2,145 in attorney fees, and $264.30 in costs. We affirm in part and reverse in part.

In 1973 Mallory, Jensen and Steelman incorporated L.D.K., Inc., as an Idaho corporation. Each of the three contributed equally to the assets of the corporation, each received an equal number of shares, and each was a director. L.D.K., Inc., was formed for the purpose of engaging in the business of commercial fertilizer application. At the time of incorporation, Mallory had been operating his own fertilizer application business. Because Mallory had more work offered to him than he could handle, the intent in forming L.D.K., Inc., was to pick up the "over flow" work offered to Mallory. At the time of incorporation Mallory was authorized, by unanimous vote of the directors/shareholders, to continue operating his personal business. It was also agreed that Steelman and Jensen were to work full time for L.D.K., Inc., while Mallory continued to operate his own dry fertilizer business.

Between 1973 and 1976, L.D.K., Inc., expanded operations, acquiring additional equipment. During that time the company was involved in the application of both liquid and dry fertilizer. However, between December of 1976 and February of 1977, the board of directors authorized L.D.K., Inc., to sell most of its liquid fertilizer equipment. Some of this equipment, including a truck used to apply liquid fertilizer, was sold to Steelman. Thereafter, L.D.K., Inc., was not involved in the spreading of liquid fertilizer, but continued the business of custom spreading of dry fertilizer. Following the sale, L.D.K., Inc.'s, principal assets were two fan bed trucks used to apply dry fertilizer.

On February 28, 1977, a board of directors meeting was held. Steelman was present at this meeting. At this meeting, the majority of the board voted to terminate Steelman's employment with the corporation. At that time, Steelman was given an option to purchase the pickup truck which he was driving and which belonged to the corporation. It was further decided that the hourly rate which the shareholders would receive for working for L.D.K. would be raised to $8.00 per hour, from $4.00 per hour; that L.D.K., Inc., would raise the rates it charged for the spreading of dry fertilizer; and that a truck equipped for the application of dry fertilizer would be sold to Jensen. A previous resolution which had limited Mallory's private business to the operation of one truck was rescinded. The sale of all of the remaining equipment owned by the corporation was also discussed.

Since this February 28, 1977, meeting, Steelman has operated his own fertilizer

application business. Steelman's business is limited to the application of liquid fertilizer. Jensen was also involved in a fertilizer application business after February 28, 1977. However, Jensen's business, like Mallory's business, involved the application of dry fertilizer.

On March 27, 1978, Steelman expressed his objections in writing to Jensen and Mallory in regärd to their operation and management of L.D.K., Inc. At that time, Steelman claimed that the majority stockholders were attempting to squeeze him out.

At a July 25, 1978, meeting of the board of directors, dissolution of the corporation was considered. At that time, Jensen and Mallory reported that the corporation had sustained a loss in its operations through April 30, 1978. Steelman was present at this meeting.

In April of 1980, Steelman filed suit against Jensen, Mallory and L.D.K., Inc., alleging, *inter alia,* that Jensen and Mallory had breached their fiduciary duties as directors by appropriating to themselves the funds and business of the corporation.

The next formal meeting of the board of directors was an annual meeting held on October 5, 1981. Although Steelman received notice of this meeting, he did not attend. At the October 5, 1981, meeting, dissolution of the corporation was again discussed. Since the total value of the assets of the corporation at that time was $17,707.46, it was determined by the board that each one-third share of the corporation was worth $5,902.49. It was also determined that Mallory and Jensen would offer to purchase Steelman's stock for $5,902.49 or, in the alternative, that Mallory and Jensen would each offer Steelman their stock for $5,902.49.

Steelman subsequently rejected both offers and counter-offered to sell all of his stock for $12,000. This counter-offer was refused by Jensen and Mallory.

Steelman received notice of a special directors' meeting which was to be held on November 2, 1981. Steelman did not attend this directors' meeting.

A final meeting was held on January 15, 1982. Steelman did not attend this meeting.

On April 6, 1982, Steelman received a check in the amount of $5,000 from the attorney representing Jensen and Mallory. No explanation was given to Steelman as to the purpose of the $5,000 check, although Steelman presumed that the check represented his share of the proceeds from the sale of the remaining assets of L.D.K., Inc. On April 15, 1982, Steelman sent L.D.K. a written demand for $12,000, representing payment for his shares. He received no response to the demand. In January, 1983, Steelman received a second check for $449.10 from L.D.K., Inc. The check showed on its face that it was a final dividend less certain offsets. The check was not negotiated by Steelman.

A bench trial was held on January 4–5, 1984, in the district court. In a decision dated May 3, 1984, the district court found for Steelman on his claim of breach of fiduciary duty. Steelman was awarded $10,220.22 in damages, representing a one-third share of the loss suffered by the corporation between February, 1977, and March, 1982. Steelman was also awarded $2,145 in attorney fees pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1) and $264.30 in costs. In considering the attorney fees issue, the trial judge reduced Steelman's original request for attorney fees by one-third, since Steelman had been, in part, responsible for delays in resolving the dispute. Mallory, Jensen, and L.D.K., Inc., now appeal.

I

█ Appellants first argue that Steelman's suit should now be dismissed since this action should have been brought as a shareholder's derivative suit rather than as a "direct action." This argument is premised on what the appellants refer to as "the well established rule that an action to redress injuries to a corporation cannot be maintained by a shareholder in his own

name, but must be brought in the name of the corporation."

The appellants, however, misconstrue the nature of this action. The gravamen of Steelman's complaint is that the majority shareholders/directors were attempting to squeeze him out. Steelman alleged in his complaint that Mallory and Jensen acted "in violation of their duties as directors of defendant corporation, and of plaintiff's rights, conspiring together to wrong plaintiff, and unlawfully corruptly and with the intent to appropriate to themselves the funds and business of defendant corporation *and to take from plaintiff his just and lawful share thereof....*" (Emphasis added.) Following trial, the district court found that the majority shareholders/directors had breached their fiduciary duty to Steelman, "a minority shareholder who was deprived of any voice in the management of the affairs of L.D.K., Inc., after February 28, 1977." Thus, it is apparent that the issue raised by Steelman, and subsequently tried in the district court, was whether the majority shareholders/directors breached their fiduciary duties to Steelman, a minority stockholder.

That the directors of a closely held corporation owe a fiduciary duty to the minority shareholders is well recognized.

"In the past, some courts have permitted majority shareholders to exercise, without any restriction other than good faith, whatever powers they had as controlling shareholders under the statutes and the corporation's charter and bylaws; and further, they have treated the fiduciary duties of the directors as running only in favor of the corporation, not to the minority shareholders. This view that the controlling shareholders and the directors do not owe fiduciary duties to minority shareholders appears outmoded, at least as applied to squeeze-outs and other attempts to eliminate minority shareholders or to deprive them of their proportionate rights and powers without a just equivalent. Where several owners carry on an enterprise together (as they usually do in a close corporation), their

relationship should be considered a fiduciary one similar to the relationship among partners." O'Neal, Close Corporations § 8.07 (2d ed.).
*See also Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). Idaho courts have recognized that a director has a fiduciary responsibility to both the corporation and to shareholders. *Weatherby v. Weatherby Lumber Co.*, 94 Idaho 504, 506, 492 P.2d 43, 45 (1972). Since Mallory and Jensen, as directors in this small closely held corporation, had a fiduciary duty to Steelman, as a minority shareholder, we cannot agree with appellants' contention that this case should have been dismissed because it is a "direct action" rather than a shareholder's derivative suit.

## II

Appellants allege that the trial court erred in finding that the defendants Mallory and Jensen breached their fiduciary duties as directors of the corporation. As fiduciaries, corporate directors are bound to exercise the utmost good faith in managing the corporation. *Great Western United v. Great Western Producers*, 41 Colo.App. 349, 588 P.2d 380, 382 (1978), *aff'd*, 200 Colo. 180, 613 P.2d 873 (1980); *Poweroil Mfg. Co. v. Carstensen*, 69 Wash.2d 673, 419 P.2d 793, 796 (1966). However, the "business judgment rule" immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment. *Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316, 317 (1974); *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47, 62–63 (1956). The burden of proving bad faith rests on the plaintiff. *Zidell v. Zidell, Inc.*, 277 Or. 413, 560 P.2d 1086, 1089 (1977).

Having reviewed the record, we conclude that the record supports the trial court's finding that Mallory and Jensen, by personally providing fertilizer spreading services which, but for the disagreement with Steelman, could have and would have

been performed by the corporation, usurped corporate opportunity for their own benefit and thus were guilty of a breach of their fiduciary duty. While both Jensen and Mallory were involved in a competing dry fertilizer application business in direct competition with L.D.K., Inc., Mallory's competition was less serious in view of the fact that Mallory's own dry fertilizer business had been authorized by unanimous vote of the directors/shareholders from the time of incorporation. In fact, the intent of L.D.K., Inc., was to pick up the overflow work offered to Mallory which he could not handle. Nevertheless, there was evidence to sustain the trial court's findings as to liability as to both Mallory and Jensen, Jensen's conduct being the most egregious.

### III

However, the trial court's computation of damages was erroneous and requires a remand for new findings. The district court determined that L.D.K., Inc., had a net loss of $30,660.66 between the years 1977 and 1982. These losses were based upon the figures taken from the company's profit and loss statements. As stated by the trial court, "In 1977 L.D.K., Inc., suffered a loss of $21,601.25 from its operations. In 1978, the corporation suffered a loss in the sum of $3,572.71 from its operation. In 1979, it suffered a loss in the sum of $4,863.08 from its operations. In 1980, L.D.K., Inc., suffered a loss in the sum of $4,488.41 from its operations. In 1981, it had a gain of $6,837.11 from its operations, and in 1982, the corporation suffered a loss in the sum of $2,972.32 from its operations." Thus the total losses for the years 1977–1982 were $37,497.77 and the profit for the year 1981 was $6,837.11. In determining damages the trial court set off this profit against the total losses, for a net loss of $30,660.66. The trial court then divided the $30,660.66 by one-third in order to determine Steelman's damages. This method of damage computation was clearly in error.

The usual measure of damages in an action for breach of fiduciary duty by a corporate director is the profit which the director received and which the corporation was deprived of by the transaction. *Pickering v. El Jay Equipment Co., Inc.*, 108 Idaho 512, 517, 700 P.2d 134, 139 (Ct.App. 1985); *Hudson v. American Founders Life Ins. Co. of Denver*, 151 Colo. 54, 377 P.2d 391, 395 (1963). Thus, Mallory and Jensen are liable to the corporation for any profit which they received as the result of their breach and which would have accrued to the corporation had they not breached their fiduciary duties. *See Pickering v. El Jay Equipment Co., Inc., supra; Hudson v. American Founders Life Ins. Co. of Denver, supra.* As a one-third shareholder in the corporation, Steelman is therefore entitled to one-third of the corporation's assets upon dissolution as well as one-third of any profits which Mallory and Jensen received due to their breaches of fiduciary duty. The trial court's findings do not address the question of what profits Mallory and Jensen received as the result of their breaches of fiduciary duty. Rather, the trial court assumed that in those years when there were losses rather than profits, the losses were caused by the breaches of fiduciary duty. However, that is an incorrect method of computing damages for breach of fiduciary duty. *See Pickering v. El Jay Equipment Co., Inc., supra; Hudson v. American Founders Life Ins. Co. of Denver, supra.* Accordingly, we reverse on the issue of damages and remand to the district court for further proceedings to determine the extent of the corporation's damage. By this opinion we do not mean to imply that the foregoing is the only method of proving damages, nor do we rule that the reduction in book value can never be a proper measure of the loss. Our ruling is that on this particular record there is a failure of proof that the loss in book value did in fact reasonably measure the actual loss of the plaintiff due to the breach of fiduciary duty by the defendants.

Affirmed in part, reversed in part and remanded for further proceedings.

No costs or attorney fees allowed.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.