865 P.2d 990

**Ronald L. and Deborah L. JORDAN, husband and wife, and Sunrise Technical Services, Plaintiffs–Appellants,**

v.

**John L. HUNTER, Defendant–Respondent.**

No. 20284.

Court of Appeals of Idaho.

Dec. 28, 1993.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiffs-appellants. Eugene A. Ritti argued.

Wilson, Carnahan & McColl, Boise, for defendant-respondent. Stephanie J. Williams argued.

REINHARDT, Judge, Pro Tem.

In this appeal we are asked to determine whether the trial court correctly granted a motion for directed verdict in favor of a corporate officer defending against the claims of the corporation. Sunrise Technical Investments (the corporation) alleged that its president and bookkeeper, John Hunter, breached his fiduciary duty and committed actionable fraud in misrepresenting the value of stock redeemed by the corporation. Because we conclude there was sufficient evidence from which a jury reasonably could have found on behalf of the corporation on its claims, the directed verdict must be set aside. Accordingly, we vacate the judgment and remand the case to the trial court for further proceedings.

## Facts

The following facts, viewed in a light most favorable to the plaintiff as is required on a motion for directed verdict, see Stephens v. Stearns, 106 Idaho 249, 678 P.2d 41 (1984), are supported by the trial record. Ronald Jordan and John Hunter met in late 1985. In 1986, they started Sunrise Technical Services to work on and monitor underground storage tanks for service stations. Although initially operating the business as a partnership, Hunter and Jordan later incorporated their enterprise. Reflecting their initial capital contributions, Hunter received fifty-one percent of the corporation's stock and Jordan received the remaining forty-nine percent. Both Hunter and Jordan served as managing officers, each having separate and distinct duties. Hunter acted as the corporation's president and was in charge of keeping all of the corporate books and tending to its financial affairs. As part of his responsibilities, Hunter made quarterly income tax installments, which, as permitted by law, he based upon the income earned by the corporation in the previous year. As an officer for the corporation, Hunter worked part-time for which the corporation paid him a salary.

Jordan, a petrology engineer with a degree in environmental science and prior experience in the industry, was the field technician for the business. Although he held a corporate office, he had no role in the bookkeeping, accounting or estimating of tax liabilities of the corporation. His duties were devoted entirely to working in the field, a full-time role, for which he too received a salary from the corporation.

After three years of operating the business with Hunter, Jordan determined that their personal conflicts and differences of opinion had undermined their working relationship. In October of 1989, he proposed to buy out Hunter's ownership in the corporation. Hunter refused indicating that because the corporation was doing well and was growing he was not interested in selling. When Jordan tendered his resignation, however, Hunter agreed to sell his shares and advised Jordan he would prepare a written estimate of the corporation's value to determine the price.

A few days later, Hunter sent Jordan a document entitled "Sunrise Technical Services, Inc. Stock Value Estimate As Of October 31, 1989," which briefly summarized the corporation's assets and liabilities. The "assets" section showed amounts for cash, property and equipment, accounts receivable, and also included a category for "unbilled receivables," representing anticipated income the corporation expected to earn in November and December. The total estimated value of these assets was $154,128. In the "liabilities" section Hunter recorded two items: $30,000 in accounts payable, and $3,000 in payroll and sales taxes. No figure was listed for income taxes. By subtracting the liabilities from the assets, Hunter estimated the net worth of the corporation to be $121,128. Based upon his fifty-one percent ownership, he then calculated the value of his shares to be $61,775. At the bottom of the estimate, Hunter wrote "John Hunter's stock could be

purchased by Ron Jordan, personally or by the corporation as a redemption." Hunter also arranged for Jordan to talk with the corporation's accountant, a Mr. Harris, not to independently verify the valuation, but to obtain financial advice concerning which of the two proposed transactions would be most beneficial to him. When Jordan spoke with the accountant, he did not inquire about the income tax liabilities facing the corporation at the end of the year, nor did he otherwise discuss Hunter's valuation. After the consultation, Jordan concluded that it would be in his own financial interest for the corporation to redeem Hunter's shares of stock.

Jordan and Hunter later met to discuss the valuation and the purchase price for the shares. Jordan specifically asked Hunter if his estimate reflected all the taxes the corporation would owe for the year, and Hunter indicated that it did. Although Jordan had access to the business records of the corporation, he did not attempt to personally inspect them or to have the books examined by a third party, but relied on Hunter's estimate and statements. The parties agreed that the corporation, and not Jordan, would purchase Hunter's shares. Based upon Hunter's valuation, Hunter and the corporation, evidently represented by Jordan, agreed to a price of $60,500. The corporation paid Hunter in two installments and acquired all of his shares, leaving Jordan as the corporation's sole remaining shareholder.

A subsequent accounting performed in conjunction with the preparation of the corporation's 1989 income tax returns disclosed an outstanding income tax liability of $28,069. When Jordan confronted Hunter with the fact that the corporation had incurred this tax liability, Hunter replied, "I'll bet it did." Jordan then asked Hunter to reimburse the corporation for Hunter's portion of the taxes. Hunter refused and the corporation brought this lawsuit seeking recovery on the grounds of breach of fiduciary duty and fraud.

At the close of the corporation's case at trial, Hunter moved for a directed verdict pursuant to I.R.C.P. 50(a). He maintained that he owed no fiduciary duty as a matter of law, and, alternatively, if such a duty was owing, there was no proof that he had breached it. He also asserted there had been no showing that he had made any material misrepresentation of fact, and he thus was entitled to a directed verdict on the fraud claim. He additionally argued that the corporation had failed to establish it had suffered damages, an essential element under either theory of recovery, and therefore a directed verdict was proper. After considering the corporation's response, the district court directed a verdict against the corporation on both of its claims, and entered judgment in favor of Hunter. This appeal followed.

### Claims on Appeal

Preliminarily, we note that the transaction at issue in this case—the corporation's redemption of its own shares of stock from Hunter—was a corporate transaction, not a transaction between shareholders. The payment of an excessive price for those shares, which is the injury claimed to have resulted from the alleged misrepresentations and omissions by Hunter, is an injury sustained by the corporation; the loss is suffered only indirectly by its shareholders. Accordingly, the right to bring an action for the injury properly belongs to the corporation alone. *See* 3A W.M. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1282 (rev. 1986) (hereinafter cited as FLETCHER). We also observe that although the pleadings aver that Hunter owed duties to Jordan flowing from Hunter's position as the corporation's controlling shareholder, there has been neither an allegation nor evidence showing that Hunter committed any wrong in this capacity, *i.e.,* that he voted his shares to the detriment of the corporation or to oppress its minority shareholders. *Compare Steelman v. Mallory,* 110 Idaho 510, 716 P.2d 1282 (1986). Consequently, there is no basis for granting relief to Jordan, as an individual shareholder, in this lawsuit. Therefore, the issues on appeal concern whether the district court improvidently directed a verdict against the corporation on its claim for breach of fiduciary duty and on its claim for fraud.

904

## Motion for Directed Verdict and Standard of Review

■ On a motion for directed verdict pursuant to I.R.C.P. 50(a), the moving party necessarily admits the truth of the adverse evidence and every inference that may legitimately be drawn therefrom in the light most favorable to the opposing party. *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984); *All v. Smith's Mgt. Corp.*, 109 Idaho 479, 708 P.2d 884 (1985). Such a motion should not be granted if there is substantial evidence, even if conflicting, to justify submitting the case to a jury. *Curtis v. DeAtley*, 104 Idaho 787, 663 P.2d 1089 (1983). Evidence is "substantial" if it is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party opposing the motion is proper. *All*, 109 Idaho at 842, 708 P.2d at 887; *Stephens*, 106 Idaho at 253, 678 P.2d at 45. Whether there is substantial evidence to create an issue of fact for the jury is a question of law. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Hence, in deciding the motion, the trial court is not free to weigh the evidence or pass on the credibility of witnesses and make findings of fact, as it does when deciding a motion for new trial. *Quick*, 111 Idaho at 763, 727 P.2d at 1191. Rather, the trial judge must view all of the evidence, drawing all legitimate inferences therefrom in favor of the nonmoving party, and decide if there is substantial evidence to justify submitting the case to the jury. Stated otherwise, the moving party is entitled to a directed verdict only if the evidence yields but one conclusion as to the verdict reasonable minds could reach. *Id.*, 111 Idaho at 764, 727 P.2d at 1192.

■ In reviewing the decision to grant a motion for directed verdict, the appellate court applies the same standard as does the trial court which passed on the motion originally. *Id.* As noted above, whether a verdict is properly directed against a party involves a question of law. Accordingly, an appellate court exercises free review over the question, without special deference to the views of the trial court. *Id.*

■ Whereas a motion for directed verdict must state the specific grounds therefor, I.R.C.P. 50(a), our scope of review is restricted to those grounds advanced by the moving party at trial. *Hartwell Corp. v. Smith*, 107 Idaho 134, 686 P.2d 79 (Ct.App.1984). Here, Hunter's motion was made on the following grounds: that Hunter owed no fiduciary duty as a matter of law; that even if such a duty was owing, there was no evidence he had breached that obligation; that the corporation had failed to establish any material misrepresentation of fact essential to sustain its claim of fraud against Hunter; and that, under either theory of recovery, the corporation cannot show it suffered any damages.

## Breach of Fiduciary Duty

■ In an action for breach of fiduciary duty, the plaintiff bears the burden of proving, first, that the defendant owed him a fiduciary duty, and second, that the latter breached this duty. H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS § 219, at 628 (1983).[1] With respect to the first element, we must decide whether under the facts presented, Hunter owed the corporation the duty of a fiduciary. If we conclude that such a duty was owing, we must then determine whether the record contains evidence which would support a finding that Hunter breached this duty.

### 1. Hunter owed a fiduciary duty to the corporation.

■ Officers are agents of the corporation, and, as such, are subject to the usual principles of agency law, including the fiduciary duties of agents. HENN & ALEXANDER, *supra*, § 219, at 586–87.[2] As an agent, an officer owes his principal, the corporation,

---

1. The corporation has alleged and argued that Hunter owed it fiduciary duties applicable to a director and an officer. However, although the record shows Hunter held a position as a corporate officer, there was no evidence to establish his status as a director of the corporation.

2. It is also recognized that, "as delegatees of the board of directors, officers are fiduciaries of the corporation subject to the same fiduciary duties as are directors within the scope of their delegated management functions." H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS § 219, at 586–87 (1983).

the fiduciary duties of good faith and fair dealing.[3] Hunter asserts, however, that the sale of his personal stockholdings was not a transaction to which his duties as a fiduciary extended. To support his position, he cites to *Stephan v. Hoops Const. Co.*, 115 Idaho 894, 771 P.2d 912 (1989), in which our Supreme Court rejected the proposition that a corporate officer owes a fiduciary duty with respect to noncorporate assets, such as the stockholdings of individual shareholders.[4] Unlike the situation presented in *Stephan*, however, the transaction in this case involved the use of corporate funds to accomplish the purchase of stock from Hunter; it was not a transaction between Hunter and Jordan, but a transaction between Hunter and the corporation.[5] It is well settled that where an officer is dealing with the corporation, even where the latter is represented by other directors or officers, the officer is under a duty of good faith and fair dealing. 3 FLETCHER, *supra*, § 919; RESTATEMENT (SECOND) OF AGENCY § 390 (1958), *cited in Mallory v. Watt*, 100 Idaho 119, 122, 594 P.2d 629, 632 (1979). Thus,

although acting on his own behalf, Hunter owed the corporation the duty of good faith and fair dealing.

The record shows that at the time the corporation redeemed Hunter's shares, including the negotiations establishing the price, Hunter was a managing officer of the corporation and in charge of its financial records and affairs, that he alone kept the corporate books, and that the corporation paid him a salary for rendering this service. We hold, as a matter of law, that in this position, Hunter owed the corporation a fiduciary duty to act in good faith and to deal fairly in the transaction.

**2. There was substantial evidence from which a reasonable jury could have found that Hunter breached his fiduciary duty of good faith and fair dealing.**

■ Having determined that Hunter owed the corporation a fiduciary duty of good faith and fair dealing, we must ascertain which either Jordan or the corporation would rely upon in purchasing his shares.

Redemption of the stock through the corporation was ultimately chosen over a sale between individuals because the parties desired certain legal consequences associated with the corporate transaction. Specifically, the corporation, as a separate legal entity, could redeem the shares using corporate instead of shareholder funds (which Jordan believed would result in more desirable tax consequences). However, having chosen the corporate transactional path, the parties may not now ignore the corporate entity, just because they *could have* chosen a different route to arrive at the same result.

Every corporation is to be regarded as a separate legal entity. *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966); *Alpine Packing v. H.H. Keim Co., Ltd.*, 121 Idaho 762, 828 P.2d 325 (Ct.App.1991). Furthermore, "where an entity chooses to incorporate under the laws of this State and to thereby receive the benefits and privileges extended to corporations, it cannot, when convenient, ask the court to ignore its corporate status and extend to it the advantages to which an individual person is commonly entitled." *Kyle v. Beco Corp.*, 109 Idaho 267, 272, 707 P.2d 378, 383 (1985). Moreover, the powers of the court to disregard the corporate form, *i.e.*, to "pierce the corporate veil," may be exercised only under limited circumstances, *Alpine Packing, supra*, none of which has been urged in or is applicable to the instant case.

**3.** Idaho Code § 30–1–35 contains the standard of the *duty of care* owed by directors, and officers as their delegates, in the *discharge of their duties on behalf of the corporation*. It is a refinement of the standard contained in former Code section 30–42, which was repealed in 1979 when the Idaho Business Corporation Act was adopted. *See* 1979 Idaho Sess.Laws, ch. 105; *Waters v. Double L, Inc.*, 115 Idaho 705, 707, 769 P.2d 582, 584 (1989). However, the enactment of this statutory provision—essentially a codification of the judicially developed "business judgment rule"—does not alter the long-standing duties of loyalty, good-faith and fair dealing owed by a fiduciary acting on his or her own behalf. *See* REPORT OF COMMITTEE ON IDAHO MODEL BUSINESS CORPORATION ACT (Idaho Law Foundation, Inc., December 11, 1978), at 66c.

**4.** *But see Fox v. Cosgriff*, 66 Idaho 371, 159 P.2d 224 (1945) (recognizing an exception to the rule where the existence of "special circumstances" gives rise to a fiduciary relationship and imposes upon the officer a duty to disclose to other shareholders any information possessed by him which might affect the value of the stock he seeks to purchase).

**5.** Hunter *could* have sold his shares to Jordan, individually, rather than to the corporation. As the record indicates, he was willing to dispose of his ownership either way. The record also makes clear, however, that Hunter presented his estimate for the purpose of establishing the price

whether there was evidence from which the jury properly could have found that Hunter breached this duty. Good faith and fair dealing require that the officer make a full, fair and timely disclosure of facts within his knowledge that are material to the transaction and which might affect the corporation's rights and interests or influence its actions. *See Perkins v. Thorpe*, 106 Idaho 138, 140, 676 P.2d 52, 54 (Ct.App.1984), *quoting Mallory*, 100 Idaho 119 at 122, 594 P.2d 629 at 632; *see also Fox v. Cosgriff*, 66 Idaho 371, 159 P.2d 224 (1945) (officer owed duty to disclose information affecting the value of stock he sought to purchase from shareholders, where, under the circumstances, a fiduciary duty existed); *accord Weatherby v. Weatherby Lumber Co.*, 94 Idaho 504, 492 P.2d 43 (1972).

■ Viewed in a light most favorable to the corporation, the evidence shows that Hunter knew the corporation was enjoying its most profitable year, that it had been making quarterly income tax prepayments based on income earned in the previous year, and therefore Hunter knew, or at least should have known, that additional income taxes would be owing at the end of the year. Hunter also received a mid-year financial statement from the corporation's accountant, which was based upon information presented by Hunter, showing the corporation was accruing an income tax liability. In addition to this evidence, we note that Hunter's response to Jordan, when confronted with the fact that the corporation had incurred a substantial tax liability, was "I'll bet it did." We conclude that this evidence is sufficient to support an finding that Hunter knew or should have known that the corporation was accruing and would owe a substantial income tax liability at the end of 1989.

Nonetheless, Hunter contends that because these taxes were not due or owing at the time he prepared the estimate in October, and because he could not have known at that time what the actual extent of the tax liability would be at the end of the fiscal year in December, the fact that taxes would be owing on the income earned in 1989 was not a fact that his fiduciary duty required him to disclose. We disagree.

■ The fact that the happening of an event is contingent or uncertain does not relieve a fiduciary of his duty to disclose it. *See Weatherby*, 94 Idaho at 506, 492 P.2d at 45. It does not permit the fiduciary to represent that the event will not occur, as has been alleged in this case. Rather, in determining whether disclosure is required, the critical inquiry is whether the information was material to the transaction and would reasonably affect the corporation's rights and interests or influence its actions. *Mallory*, 100 Idaho at 122, 594 P.2d at 632.

In this regard, Hunter argues that because the parties arrived at the price for the shares based on a determination of the corporation's net assets, and not its income-producing potential, any misrepresentation concerning the existence or extent of such taxes was immaterial to their pricing decision. This argument is without merit. The price which the corporation paid for Hunter's shares was derived by subtracting the corporation's liabilities, as disclosed by Hunter, from its assets, which included income earned through 1989. The fact that the corporation would be liable for unpaid taxes on a substantial portion of the income received in 1989, if disclosed, clearly would have impacted Hunter's estimate of the corporation's net assets, and hence was material to the price which the corporation decided to pay for Hunter's shares.

We have carefully reviewed the trial record and conclude that it contained sufficient evidence from which a reasonable juror could have found that Hunter failed to make a full, fair and timely disclosure of facts within his knowledge, which were material to the transaction, and which might have affected the corporation's rights and interests or influenced its actions. Accordingly, we hold there was sufficient evidence to support a finding that Hunter breached his fiduciary duty.

### Fraud

■ Next, we consider whether the directed verdict was properly entered against the corporation on its fraud claim. To recover in an action asserting fraud, the plaintiff

must establish each of the following elements by clear and convincing proof:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Faw v. Greenwood,* 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980). If the plaintiff fails to present substantial evidence on one or more of these elements, the trial court properly may grant a motion for a directed verdict in favor of the defendant. *See id; Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986).

▮▮▮ Hunter maintains that his "stock value estimate" was merely an expression of his personal opinion, which, as a matter of law, did not constitute a representation of fact on which the corporation was entitled to rely, and therefore cannot form the basis of actionable fraud. We disagree.

▮▮▮ As a general rule, fraud cannot be predicated upon what, as a matter of law, amounts to, or in factual cases is found by the trier of fact to be, the mere expression of an opinion not intended to be relied upon as a statement of fact. *Barron v. Koenig,* 80 Idaho 28, 324 P.2d 388 (1958); *Fox,* 66 Idaho at 380, 159 P.2d at 227–28; *Mitchell v. Barendregt,* 120 Idaho 837, 820 P.2d 707 (Ct.App. 1991); *Bodine v. Bodine,* 114 Idaho 163, 754 P.2d 1200 (Ct.App.1988); 37 AM.JUR.2D *Fraud and Deceit* § 45 (1968). As our Supreme Court has recognized, however, "where actual value is known and false statements are knowingly made with intention to deceive, and do deceive the parties to whom they are made, such statements constitute actionable fraud. Such statements are not expressions of opinion but are statements of material facts." *Fox,* 66 Idaho at 380, 159 P.2d at 227 (citations omitted). Whether a statement was intended as a mere expression of opinion or an affirmation of fact is a question of fact. *Fox,* 66 Idaho at 380, 159 P.2d at 228; *accord* 37 AM.JUR.2D *Fraud and Deceit, supra,* §§ 46, 48, 50. Thus,

where a speaker gives an opinion when he is aware of facts incompatible with such opinion, the opinion may amount to a false statement of fact if made with the intention of deceiving or misleading. *Id.,* 66 Idaho at 380–81, 159 P.2d at 227–28; 37 AM.JUR.2D *Fraud and Deceit, supra,* at § 49. Moreover, where, as here, a fiduciary relationship exists between the parties, the one trusted is under an obligation to be truthful, whether stating matters of fact or opinion, and the other has the right to rely. *See Fox,* 66 Idaho at 380, 159 P.2d at 228; *Mitchell,* 120 Idaho at 844, 820 P.2d at 714; *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980); 37 AM.JUR.2D *Fraud and Deceit, supra,* § 51; *Restatement, supra,* § 390.

The record before us in this case contains sufficient evidence to show that at the time he presented the stock value estimate, Hunter knew of facts concerning the corporation's impending tax liability, that he knowingly omitted this information from his itemization of liabilities with an intent to mislead the corporation concerning the value of its stock, and that he thus induced the corporation to pay a price for his shares higher than it otherwise would have paid. In light of this evidence, we cannot conclude that Hunter's statements concerning the liabilities of the corporation, and the taxes it would owe at the end of the year, amounted to a mere expression of his personal opinion.

### Damages

▮▮▮ Finally, Hunter asserts that the corporation failed to establish damages, an element essential to recovery under either of its theories, and that the district court's directed verdict may be sustained on that basis. We note that in bringing this action for breach of fiduciary duty and fraud, the corporation did not seek to invalidate its redemption of shares from Hunter, but elected instead to confirm the transaction and to recover either compensation for its loss or reimbursement for Hunter's unjust profits. *Steelman v. Mallory,* 110 Idaho 510, 514, 716 P.2d 1282, 1286 (1986); 3 FLETCHER, supra, § 950; *Restatement, supra,* § 399. Hunter contends that because the corporation did not present evidence of the book value of its

stock or other evidence of its income-producing potential, the jury could not possibly have ascertained whether the corporation paid an excessive price for its shares and therefore could not have found that the corporation had been damaged. We observe, however, that it is irrelevant to the corporation's claim for damages that its stock has increased or decreased in value, unless such change can be attributed to Hunter's failure to disclose the tax liability. *Steelman,* 110 Idaho at 514, 716 P.2d at 1286. Rather, the corporation's damages are measured either as its loss or Hunter's profits, proximately caused by Hunter's alleged wrong. *Id.; Pickering v. El Jay Equipment Co.,* 108 Idaho 512, 517, 700 P.2d 134, 139 (Ct.App.1985).

Here, the evidence shows that the parties agreed to a price which was based upon a simple calculation of subtracting the corporation's liabilities from its assets, and then multiplying the balance by fifty-one percent. The evidence further shows that Hunter misrepresented the value of his stockholdings by omitting $28,069 in corporate income taxes. Given this evidence, we conclude that the jury could properly have calculated the corporation's damages by taking fifty-one percent of the $28,069 liability Hunter failed to disclose.

### Conclusion

For the reasons explained above, we reverse the district court's decision to grant a directed verdict on the corporation's claims. Accordingly, we vacate the judgment and remand the case for further proceedings.

■ Because it has prevailed in this appeal, the corporation, Sunrise Technical Services, is entitled to an award of its costs. I.A.R. 40. The corporation also requests an award of attorney fees, pursuant to I.C. § 12–120(1). However, whether the corporation is entitled to the benefit of that statute has not yet been established at the trial level; it would be premature for this Court to apply the statute without the trial court first determining that all predicates required under the statute have been met. If, on remand, an award of fees to the corporation is made by the trial court under I.C. § 12–120(1), the court may take into account the fees incurred by the corporation for successfully pursuing this appeal.

WALTERS, C.J., and PERRY, J., concur.